IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KEVIN TAYLOR
Reg. No. 03421-068,

       Petitioner,

v.

DAVID L. WINN
Warden, Devens-F.M.C.,

       Respondent.

Civil Action No. _____

### PETITION FOR WRIT OF MANDAMUS, AND/ OR HABEAS CORPUS, WITH AUTHORITY IN SUPPORT THEREOF, PURSUANT TO   28 U.S.C., SECTIONS 1361 and 2241

    COMES NOW, KEVIN TAYLOR ["Petitioner"] by and through Pro se and in Forma Pauperis, and hereby submits the following in support of this Petition for Writ of Mandamus, and/or Writ of Habeas Corpus pursuant to Title 28, United States Code, Sections 1361, 2241 and 2243 et. seq.:

### I.   Jurisdiction

    The district court's Jurisdiction is invoked pursuant to Title 28 of the United States Code, Sections 1361, 2241 and 2243. The Court further has Jurisdiction to grant relief pursuant to such statutes when the Petitioner was deprived of a "liberty Interest" protected by the due process clause of the Fifth Amendment of the United States Constitution. See **Hewitt v. Helms**, 459 U.S. 460, 103 S.Ct. 664, 74 L.Ed.2d 675 (1973); **Meachum v. Fano**, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451

(1976) The district court's Jurisdiction is also invoked when section 2241 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody for violating a federal criminal statute. See **Maleng v. Cook,** 490 U.S. 488, 493 (1989); **Ralston v. Robinson,** 454 U.S. 201, 70 L.Ed.2d 345, 102 S.Ct. 233 (1981); see also, **Monahan v. Winn,** 276 F. Supp.2d 196, 203 (D.Mass. 2003) Accordingly, this matter is properly brought pursuant to 28 U.S.C., § 2241, inasmuch as Petitioner seeks the Court's intervention in correcting the manner in which his sentence is being computed and executed.

Moreover, section 1361 is clear on its face, and grants the district court "original Jurisdiction [over] any action in the Nature of a Mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." see 28 U.S,C,, section 1361. See **Pankey v. Webster,** W.D.Mo. 1993, 816 F.Supp. 553 (finding that statute authorizing district courts to compel officer or employee of the United States to perform a duty owed to the Plaintiff does not provide cause of action unless defendants are officers or employees of the United States or are a federal agency); **Marquez-Ramos v. Reno,** C.A.10 (Colo) 1995, 69 F.3d 477 (finding common-law writ of mandamus, as codified in federal statute, is intended to provide remedy for plaintiff only if he has exhausted all other avenues of relief and only if defendant owes him clear nondiscretionary duty)

## II.  Statements of the Case and Pertinent Factual History

On January 5, 1989, the Petitioner was arrested by a federal

2.

drug enforcement task force for various drug related offenses in violation of 21 U.S.C. § 841(a)(1).

On June 28, 1989, the United States District Court for the Western District of Pennsylvania sentenced the Petitioner under the Sentence Reform Act of 1984 to serve 85% of a twenty year imprisonment, $10, 000 fine was imposed, which the Court also ordered the sale of Petitioner's Sport Utility Vehicle ("SUV"), Chevy-Blazer valued at $8,000 to paid the fine. see Exhibit "A"

Subsequently, the Court completed the Judgment and Commitment ("J & C") order which provided the terms of the imprisonment and the fine, but failed to indicate thereof its intent as to the time-requirement of the fine. See Exhibit "B"

That, from 1995 to 2001, the Petitioner enjoyed exempt status precluding him of fine payment dued to several Unit Team (Counselors and Case Managers) of various Bureau of Prisons institutions contact with the Court concerning the Judgment and Commitment Order failure to indicate the time requirement for payment of the fine. These Unit Teams as well as the government motioned the Court to clarify the Judgment and Commitment Order to indicate "immediate" payment of the fine, but the Court declined. See Exhibit "C" These Unit Teams assigned the Petitioner as exempt from paying the fine while incarcerated as a result of the Court's refusal to amend the J & C order.

However, between 2001 to present, several other Unit Teams ignored Petitioner's fine exempt status to declare him as Inmate Financial Responsibility Program ("IFRP") refusal though contrast to Bureau of Prisons Program Statement on fines. See Exhibit "D"

Also, between 2000 to the present, the Petitioner filed several adminstrative remedies pertaining to the assigned "refusal status" for his alleged failure to participate in the Inmate Financial Responsibility Program ("IFRP"), and the BOP denied all adminstrative remedies thus failing to comply with either the BOP regulations, rules and policy program statements. Exhibit "E"

Further, the Petitioner's sentence was computed by the BOP which exceeds the 85% that Congress intended federal prisoners to serve. That, between 1989 to the present, the BOP has miscalculated the Petitioner's good time credit which they provided him only forty-seven (47) days instead of the fifty-four (54) days authorized by Congress. Exhibit "F"

The Petitioner filed several administrative remedies to resolved the incorrect computation of his sentence. The Bop denied all administrative remedies, thus, failing to provide him all good-time credit towards his sentence. Exhibit "G"

III.  **Mr. Taylor is being Held in Custody in Violation of the Laws of the United States and the Constitution**

That, in 1984, the Statute under Title 18 U.S.C. § 3624(b) was promulgated by Congress as part of the Sentence Reform Act of 1984, to provide the BOP the authority to compute federal prisoners' sentences in accordance with 15% good-time credit. See 141 Cong. Rec. § 52348-01 C21

Section 3624(b) provides 54 days good-time credit towards service of sentence for satisfactory behavior for each prisoner serving a term of imprisonment of more than one year.

The BOP has promulgated a regulation interpreting this

4.

provision as awarding good-time credit on the basis of "each year served." See 28 C.F.R., § 523.20  Under BOP interpretation of §3624(b), the BOP's computation of good-time credit requires federal prisoners to serve 87% of their sentences instead of the 85% intended by Congress, which thus violates section 3624(b) and the Fifth Amendment of the United States Constitution.

Secondly, the BOP has promulgated P.S. §5380.07 which provide in pertinent part that "no obligation" is entered for an  inmate when there is no documented financial obligation. Exhibit "H"

Congress enacted statute 3572 of Title 18, United States Code to requires the Courts to impose fines in cases where the Courts determine the defendant has the capability to pay a fine. Statute 3572(d) further requires fines to be paid immediately when the court otherwise indicate payment on a certain date or installments. However, no statute was promulgated that indicate or give the BOP the authority to be a collection agent for the federal government, nor provide the BOP the authority to impose adverse sanctions on inmates for failing to pay court imposed fines. Thus, the BOP's practice of requiring inmates to participate in a program that collects fines for the Court, or imposing consequence sanctions on inmates that adversely affects his incarceration and sentence for failing to participate in such program violates due process.

IV.  Statute 3624(b), Program Statement 5380.07 and Due Process entitles the Petitioner to Reduction of his Sentence, and Exemption Status as to the Fine.

Mr. Taylor is entitled to relief under 28 U.S.C. § 2241 because (a) his § 2241 petition is based on events that occurred

5.

after the imposition of sentence. See **Gomori v. Arnold,** C.A.3 (Pa.)
1976, 533 F.2d 871, certiorari denied, 97 S.Ct. 140, 429 U.S. 851,
50 L.Ed.2d 125 (where prisoner seeking federal habeas corpus
challenges effect of events "subsequent" to his sentence on that
sentence, habeas corpus remedy is appropriate remedy, . . . ), (b)
federal courts have jurisdiction over habeas corpus petitions from
federal prisoners "in custody in violation of the Constitution or
Laws or Treaties of the United States." 28 U.S.C. § 2241(c)(3);
**Irvin v. Dowd,** (Ind) 1959, 79 S.Ct. 825, 359 U.S. 394, 3 L.Ed.2d
900 (federal courts have power to grant writs of habeas corpus
for purpose of inquiring into cause of restraint of liberty of
any one in custody under authority of state in violation of the
Constitution), and (c) section 2241 is the proper vehicle for
attacking the execution of sentence, . . . . , which is filed in
the district that the prisoner or custodian is located. See
**United States v. DiRusso,** C.A.1 (Mass) 1976, 535 F.2d 673(the
writ of habeas corpus is the proper vehicle for attacking the
execution of sentence and guidelines established by the parole
board); **United States v. Isaacs,** D.C. Ill. 1975, 392 F.Supp. 597
(this section is available to federal prisoner to challenge
the execution of senence by either the parole board or the
bureau of prisons); **Maleng, supra; Monahan, supra; Ralston, supra.**

Further, Courts may grant the writ when the petitioner
alleges and proves that the length of his sentence computed by the
BOP affected the duration by his sentence. **McClain v. Bureau of**
**Prisons,** C.A.6 (Tenn) 1993, 9 F.3d 503 (district court may grant
relief to habeas corpus petitioner who alleges erroneous

computation of petitioner's sentence credits for time in detention
prior to sentencing).

Due process clause of the Fifth Amendment protects prisoners'
"liberty interest" in federal statute, BOP Policy and Program
Statements, which federal courts has authority to ensure under
section 2241. **Kentucky Dep't of Corrs v. Thompson, infra,** 490 U.S.
454, 460 (1989); **Hewitt, supra; Sandin, surpa.**

**V.    The Due Process Clause of the Fifth Amendment Guarantees
       the Petitioner the Right to have his Sentence and Fine
       Reduced, or the Fine Exempted.**

> **a.    The BOP's arbitrary placement of Petitioner
>        in a Mandatory Inmate Financial Responsibility
>        Program Deprived Him of His Due Process Protected
>        Liberty Interest guaranteed by Federal Statutes,
>        and BOP Program  or Policy Statements.**

The Fifth Amendment prohibits the Government or any agency
from depriving an inmate of life, liberty, or property without
due process of law. See **United States Constitution, Amendment V.**
The due process clause was further designed to protect the
individual against arbitrary government action. See **Wolf v.
McDonnell,** 418 U.S. 539, 558 (citing **Dent v. West Virginia,** 129
U.S. 114, 123 (1889); see also, **Sameric Corp. v. City of
Philadelphia,** 142 F.3d 582, 590 (3d Cir. 1998)

Analysis of Procedural due process questions involves a
two-part inquiry, one , whether the State has interfered with an
inmate's protected liberty or property interest, and two, whether
procedural safe-guards are constitutionally sufficient to protect
against unjustified deprivations. See **Kentucky Dep't of Corrs. v.
Thompson,** 490 U.S. 454, 460 (1989)

Protected "liberty interests" can be created first by the
Due Process Clause of its own force, see **Sandin v. Conner,** 515
U.S. 472, 484 (1995); See e.g., **Harper v. Young,** 64 F.3d 563, 566
(10th Cir. 1995)(inherent constitutional liberty interests arise
when prisoner has acquired substantial freedom such that
deprivation requires doe process protection); second, by a Court
order, see **Warsers v. Grossheim,** 990 F.2d 381, 384 (8th Cir. 1993)
(Court order mandatory inmate's reinstatement to highest privilege
status created liberty interest in reinstatement); cf, **Smith v.
Summer,** 994 F.2d 1401, 1406 (9th Cir. 1993)(consent decree
can create liberty intetest); or third, by a treaty, and fourth,
by States through statutes or regulations, **Sandin,** 515 U.S. at
483-84.

Further, the High Court noted that a State, by its own
actions, may create a liberty interest protected by the due
process clause. **Hewitt,** 459 U.S. at 469. Moreover, it is well
settled law that the due process clause shields from arbitrary or
capricious deprivations those facets of a convicted criminal's
sentence that qualify as "liberty interest." **Morrisey v. Brewer,**
408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)

Under these principles of law, a "liberty interest" in the
constitution arises when a prisoner has acquired a substantial,
although conditional, freedom such that 'the loss of liberty
entitled [by its revocation] is a serious deprivation requiring
that the [prisoner] be accorded due process. **Whitehorn v.
Harrelson,** 759 F.2d 1416-1420 (11th Cir. 1985)(quoting **Gagnon,**
411 U.S. at 781, 93 S.Ct. at 1759)

In this case, the sentencing court had imposed a ten-thousand dollars fine. There was no order given by the Court that would indicate the method for when the fine should be paid. However, the Court did ordered the Government to sell the Petitioner's 1985 Chevy-Blazer, S-10 Sport Utility Vehicle (SUV), that was appraised at eight-thousand-five hundred ($8,500) dollars, to pay the fine. Exhibit "A"

Further, the Court did not indicate in its judgment order that the Federal Bureau of Prisons has the authority to collect the fine for the Court, nor does that record or any other court record indicates when the fine must be paid except where the government was ordered to pay the fine with the sell of the truck. Exhibit "B" Equally important is the fact that the records reflects the Court's rejection of several attempts made by the government and the Federal Bureau of Prisons (BOP) to amend or clarify the judgment order to mandate that the fine be paid immediately. Exhibit "C"

in addition, the facts also show that the Government failed to adhere to the Court order to sell the SUV truck to paid the fine, which resulted in the BOP demand that the Petitioner participate in the Bureau's Inmate Financial Responsibility Program (IFRP) to pay the fine. Because the Petitioner refused to participate in such program that the BOP had imposed adverse sanctions against him. Exhibit "D" [1]

---

[1] The BOP has ordered the Petitioner to pay the fine and as a result of such failure the BOP has restricted his commissary spending to $25. monthly while other inmate could spend up to

9.

First, the government's failure to pay the fine with the proceeds from the sale of Petitioner's vehicle as ordered by the Court was clearly a deprivation of Taylor's due process protected "liberty interest" created by the Court' order. **Sandin v. Conner, supra; Warsers, supra.** Second, the BOP 's placement of Taylor in a mandatory program to attempt to force him to pay the fine, which was contrary to program statements 5380.07, nor supported by any federal statute was a violation of his right to due process where the BOP failed to adhere to its own policy statement and federal statute.

For instance, the Petitioner had a due process protected liberty interest in the Court order, federal statute and BOP program statements which provided mandatory language authorizing the government and BOP to adhere to such order, statutes and policies.

The principles of law governing procedural due process which provides protection of individual's liberty interest clearly defines what constitutes a violation of the Fifth Amendment of the Constitution.

As previously demonstrated herein, the two part inquiry of a procedural due process violation involves questions of whether the state or government has interfared with a prisoner's protected liberty interest, and whether procedural safe-guards are

---

$290 monthly, denial of any camp facility, half-way house, and transfers to other facilities and lowest housing status.

constitutionally sufficient to protect against unjustified
deprivation. **Thompson, supra,** 490 U.S. 454, 460 (1989)

Since protected liberty interest can be created by due
process of its own force, or by court order, a State, Congress,
or an agency through statutes or regulations, and created by its
own actions then such Court order, federal statutes, BOP program
statements and by the BOP own actions had created due process
protected liberty interest, which provided the Petitioner an
expectation, and entitlement.

Surely, the Petitioner had a due process protected liberty
interest created by the Court's order where the order required
the sell of his vehicle to pay the fine  was based on federal
statute creates such liberty interest in the payment of the fine.
Indeed, such order created a liberty interest because Taylor
had an expectation created by such Court order, which cannot be
taken away without affording him due process. **Dominique v. Weld,**
73 F.3d 1156, 1158 (1st. Cir. 1996) See also, **Sandin v. Conner,**
515 U.S. 472, 132 L.Ed.2d 418, 115 S.Ct. 2293 (1995)

In other words, the Court's decision created a liberty
interest which Taylor had an expectation since such order
restricted the Government's discretion which they could not
deprive  him of such without affording him due process
of law. **Mccann v. Cunningham,** 315 F.Supp.2d 150 (D.N.H. 2004)

Because  the Court created a protected liberty interest by
placing substantive limitations on government discretion; thus,
given the court's authority to make such order  derived from

11.

federal statute [3572(d)] then the government's failure to adhere to such order violated Taylor's due process right.

As clearly demonstrated by the facts in the records, Taylor was denied his due process protected "liberty interest" created by the Court's order that mandated the government to pay the fine with the proceeds from the sell of his vehicle. Esecially, since the Court order provided him an expectation that created a liberty interest which could not be taken away without affording him due process. **McCann, supra.**

After all, the Court order, based on a federal statute [3572(d)], had created a liberty interest that mandated strict compliance which the government's failure to adhere to such violated Taylor's due process right. **See Dominique, supra; McCann, supra, and Sandin, supra.**

Other reasons Taylor should be either exempt from paying the fine are because, first, the BOP lacked the authority to collect payment for the fine, nor required him to pay the fine, and second, the BOP policy statement precludes the BOP from collecting payment of fine when there is a lack of documental finding by the Court authorizing such payment, which Taylor had a protected "liberty interest" in such policy. Exhibit "H"

To begin, the First Circuit along with several other Circuits has interpreted statute 3572(d) as prohibiting district courts from delegating its authority to the BOP to collect fines. See **United States v. Merric,** 166 F.3d 406, 409 (1st Cir. 1999); **United States v. Tarbox,** 361 F.3d 664 (1st Cir. 2004), citing, **United States v. Kasser,** 47 F.3d 562 (2d Cir. 1995);

12.

**United States v. Miller**, 77 F.3d 71, 77-78 (4th Cir. 1996)

For instance, under Statute [18 U.S.C. § 3572(d)] Congress emphasized in pertinent part that, "a person sentenced to pay a fine or other monetary penalty shall make such payment immediately unless, in the interest of justice, **the Court provide for payment on a date certain or in installment . . . ."**

Here, the statute clearly authorizes only the Court to order the immediate payment of fines, and provide such payments on a certain date, or installment. Further, the statute used mandatory language such as "shall" creating a liberty interest, expectation protected by the due process clause. **McCann, supra; Sandin, supra,**

Equally important, the First Circuit interpretation of the statute clearly recognizes that such prohibits district court of delegating its authority to the BOP to collect fines. **Merric, supra; Tarbox, supra.** However, with the law of the case being clear that the BOP lacked any authority to collect fines, still the BOP imposed, over Taylor's objection, the IFRP to attempt to collect the fine. After Taylor refused to participate in this program the BOP imposed sanctions against him which violated his due process right to be free from loss of liberty entitlement(s). Exhibit "D"

Clearly, Taylor was denied due process where the BOP deprived him of "liberty interest" created by statute which the BOP lacked the authority to take away. In fact, only the Court had the authority to provide installment plans to order Taylor to pay the fine. Since, the statute prohibited the BOP from

13.

imposing an installment to collect the fine then Taylor's due
process right was violated where the BOP failed to adhere to
the Statute which he (Taylor) had an expectation or liberty
interest in. Just as the BOP's policy statement 5380.07
further prohibits the BOP from imposing on Taylor the IFRP
("Inmate Financial Responsibility Program"). Exhibit "H"

Notably, Program Statement provides in pertinent part
that "no obligation" is entered for inmate when there is no
documented financial obligation. See PS 5380.07 (Exhibit-H)

As the Program Statement indicates, there must be a
"documented financial obligation" that the fine must be paid
immediately. Because the record show that the Court failed to
indicate in any document an obligation for Taylor to pay the
fine immediately then the BOP own policy statement precluded
it from imposing its program (IFRP) or sanctions against him.

Actually, the judgment and commitment order ("J & C") which
is the only document besides the sentencing records that could
indicate the Court's intent on the payment of its fine, does not
reflect the Court's intent the fine was to be paid immediately,
which the section in that document omits any mark to indicate
"immediate payment". Given this record does not indicate
immediate payment nor any installment then the BOP policy
statement precludes it from imposing the IFRP or sanctions on
Taylor. Exhibit "B"

Besides, the BOP lacked authority to imposed it IFRP on
Taylor since he has a liberty interest in the policy statement
which could not be taken away without affording him due process.

14.

**Sandin, supra.**  The Policy statement created a liberty interest protected by due process where the BOP repeatedly adhered to such policy on several occasions (i.e., four different Unit Teams- McKean-FCI, Cumberland-FCI, Allenwood-FCI and Fort Dix-FCI) thus exempted him from payment of the fine. **Hewitt, surpa,** 459 U.S. at 469   See Exhibit "C"

Clearly, the BOP's actions on several occasions at different institutions where it exempted him from payment of the fine was a created liberty interest that the BOP could not take away without affording him due process. **Id.**  Indeed, where the BOP's own actions along with its policy statement created a liberty interest which Taylor had an expectation then the BOP arbitrary action to take away such entitlement without affording him due process violated his Fifth Amendment right. **Id.**

According, the BOP should be prohibited from imposing the IFRP on Taylor to pay the fine since the Court cannot delegate it the authority to do so, nor does its (BOP) policy, or the facts of the case authorizes such payment. Further, Taylor should be exempt from paying the fine when the government was ordered to pay such and the statute prohibit the collecting of fine by the BOP.   Exhibit "A"

> b. **The BOP Failure to provide the Petitioner his Mandatory 54 days Time Credit towards Sentence for Each Year Imposed by the Court as directed by Congress is an Unauthorize Extension of his Sentence in Violation of the Fifth Amendment's Due Process Clause.**

The BOP through its Code of Regulation (28 C.F.R. § 530.20) has arbitrarily deprived Petitioner of approximately one-

hundred seventy-three (173) days of good-time credit thus extended
his sentence beyond the maximum term of imprisonment for a
twenty (20) year sentence in violation of his right due process.

The Petitioner submits that he has a due process right
through statute [18 U.S.C. § 3624(b)] to serve only eight-five
(85%) percent of his sentence, which Congress has authorized
fifty-four (54) days of good-time credit for **each years** **of**
**imprisonment imposed** on federal defendant. See 18 U.S.C. § 3682(b)

After all,   Section 3624(b), which was enacted as part of
the Sentence Reform Act of 1984, provides, in pertinent part, as
follows:

> b.   Credit towards service of sentence for
>      satisfactory behavior, --
>
>      (1) Subject to paragraph (2), a prisoner
>      serving a term of imprisonment of more
>      than one year . . . . may receive credit
>      toward the service of the prisoner's
>      sentence, **beyond the time served, of up**
>      **to 54 days at the end of each year of the**
>      **prisoner's term of imprisonment,** beginning
>      at the end of the first year of the term . . .

18 U.S.C. § 3624(b).

However, the Bureau of Prisons has promulgated a regulation
interpreting this provision as awarding good-time credit on the
basis of "each year served." See 28 C.F.R. § 523.20 Thus, the
BOP has equated "term of imprisonment" to "time actually served."
Such an equation, however, is a strained reading of the statute,
and a complete distortion of the congressional intent underlying
§ 3624(b).

For instance, the relevant key words to Congress intent
when drafting statute 3624(b) is the words "prisoner who is

16.

serving a term of imprisonment of more than 1 year" may earn good-conduct time. The phrase "term of imprisonment" as used in the statute appear to means the time served because when viewing subsection (a) of the same statute (3624) the first sentence of that paragraph provides, " A prisoner shall be release by the BOP on the date of the expiration of the prisoner's term of imprisonment less any time credit. . . "

In **White, infra,** the Court found that this sentence in § 3624(a) only makes sense if a term of imprisonment is another way of saying the sentence imposed. See **White,** 314 F.Supp.2d at 838  Further, the Court in **White** reasons for reaching such conclusion is oblivously clear when it emphasized that if "term of imprisonment" means only the time served, there would be no need to substract "time credit" to determine the release date because good conduct time would already be taken into account. Indeed,     this sentence is in essence a calculation for time served, sentence imposed minus good time credit equals time served. **Id.**

Nonetheless, the BOP insist on computing petitioner's sentence by determining the good-conduct time after he already served the sentence which, first, conflicts with Congress intent that federal prisoners only serve 85% of their term of imprisonment and second, inconsistent with its (BOP) own policy statement (§5100.07) which provides the correct method  for calculating prisoners' good-time credit. Exhibit "I"

Specifically, the BOP promulgated regulation 523.20 of 28 C.F.R., which provides the calculation of prisoners 54 days

good-time credit by awarding such after each year actually served; thus, by calculating the prisoners' 54 days good-time credit after each year served then the BOP is actually awarding the prisoner 47 days good-time credit towards his sentence, which requires him to serve 13% of his sentence. See Exhibit "F"

Realistically, Congress did not intend for federal prisoners to serve 13% of their sentence, nor receive only 47 days of good-time credit. In fact, Senator Joseph Biden, a co-author of the Comprehensive Crime Control Act of 1984, made it clear that Congress, in enacting the Act, intended to give inmates good-time credit of up to 15% of their sentence. **See, 141 Cong.Rec. S2348-01 (2/9/95); 140 Cong.Rec. S12314-01, S12350 (8/23/94)**

Further, on November 1, 1990, the United States Sentencing Commission updated Chapter 1, part A(3) of the Federal Sentencing Guidelines Manual, to "reflect the implementation of guideline sentencing on November 1, 1987." See **U.S.S.G. Appendix C, Amendment 307 (effective date November 1, 1990)** The Sentencing Commission amendment was in response to the abolition of parole and the observation that federal prisoners will serve less than approximately fifteen (15%) percent of their entire sentence, which the fifteen percent would be awarded for good conduct.

Besides, Congress has enacted statute (3624) to provide fifty-four (54) days of good time credit for each year of imprisonemnt, which also calculates to 85% that the prisoner must serve on his sentence when considering all good time credit.

However, the Bureau of Prisons policy for computing good time credit effectively requires all federal prisoners' sentence

18.

under the Sentence Reform Act to serve approximately 87% of their sentence, which conflicts with Congress intent that federal prisoners sentence 85% of sentence, if awarded all 54 days of good time credit for the term of imprisonment.

Notably, Statute (18 U.S.C. § 3624) provides federal prisoners 54 days of good time credit for his "term of imprisonment." Thus, as prove of Congres intent as to the meaning of the phrase "term of imprisonment" the Court has only to look to Congress statements in enacting the Sentencing Reform Act of 1984, where it stated prisoners are to serve 85% of their sentence, or less than 15% of the entire sentence  imposed. Further, if one calculate 54 days from the entire sentence imposed then the results would be less than 15% of the entire sentence, which is equivalent to serving 85% of the sentence.

For example, on a twenty year (20) sentence with includes 54 days good time credit, to determine the 85% of this sentence, or less then 15% of the entire sentence, one would have to determine 85% of 240 months, which equals exactly 204 months, or 17 years, which is actually 85% of twenty years. Indeed, as shown, the BOP can only arrive at less then 15% of the sentence, or ensure prisoner serve 85% of the sentence by calculating the entire term of imprisonment, and deducting the 54 days from such term.

Certainly, it was Congress intent in enacting statute 3624 to require the phrase "term of imprisonment" to mean the sentence imposed since that is the only way to determine 85% of the sentence imposed.

Clearly, the BOP method of calculating Taylor's good-time credit which requires him to serve over 87% of his sentence is an unathorize extension of the sentence imposed, thus, such method-computation contradicts Congressional intent that federal prisoners served 85% of the sentence imposed. Further, such practice by the BOP of computing prisoner's good-time credit by computing the "time actually served" which result in prisoner serving over 87% of the sentence imposed is a violation of procedural due process since statute [18 U.S.C. § 3624(b)] provides 54 days of good-time credit  instead of only 47 days afforded by the BOP method.

Moreover, Taylor's due process right was violated by the BOP method of computing his good-time credit since he had a "liberty interest" created by the statute (§3624) where such mandates federal prisoner receive 54 days good-time credit for good conduct instead of 47 days as provided by the BOP. After all, such statute created an expectation where the statute authorizes him to receive 54 days of good-time credit that cannot be taken away except by an act of misconduct committed by the prisoner. Thus, since the Petitioner had an expectation created by the statute then he had a liberty interest in such good-time credit which was protected by due process. See **Sandin, supra; Hewitt, supra.**

Indeed, the statute provided a due process protected liberty interest where Congress explicitly indicated repeatedly through the Sentence Reform Act of 1984, statute (§3624), bills and Congressional hearing that federal prisoner shall serve 85%

20.

of the sentence imposed, which can only be achieved by providing
prisoner the entire 54 days of good-time credit for each year
of the sentence imposed. See **Sentence Reform Act of 1984;** also
see **141 Cong. Rec. § 52348-01 C21**

Because the Bop failed to adhere to such statute that mandate
it to provide Taylor 54 days of good-time credit towards his
sentence, which he had an expectation to such, then the BOP has
arbitrarily thus effectively deprived him of his right to due
process where he had a liberty interest invested in the statute
thus the 54 days-good-time credit. **Hewitt, supra; Sandin,
supra.**

Accord, the Court should order the BOP to provide Petitioner
his entire 54 days of good-time credit for each of the years
imposed, and thus require them to calculate the sentence
imposed (20 years) with the 54 days good-time credit to ensure
that he only serve 85% of the sentence as was mandated by
Congress.

Another reason the BOP should be ordered to compute
Taylor's entire sentence imposed (instead of the time actually
served ) with the 54 days good-time credit as afforded by statute
§3624(b) is because the BOP own Program Statement mandate this
agency to do so. Specifically, Program Statement 5100.07
authorizes the BOP to determine inmates "length of incarceration",
"the months to release" and the "projected release date" by
computing the inmate's entire sentence with the 85% to determine
such. Further, this Policy Statement provides an example to
demonstrate such described method to determine the "length of

incarceration", "months to release", and the "projected release date". See Exhibit "I"

Here, the BOP policy indicate that the sentence imposed is computed into months such as 96 months for a 8 year term of imprisonment ( sentence ). Then the example states that the sentence (96 months) is timed by 85% to get the actual months of incarceration which such equation would be 82 months. **Id.**

Plainly, this method authorized by the BOP's policy statement in which to compute inmates sentence is also a liberty interest protected by due process since the inmate has an expectation to such method especially when the BOP policy use mandatory word such as "Shall" to limit all discretion. **Sandin, supra.** Exhibit "I"

In fact, the program statement provides an expectation to Taylor where such mandates a method to determine his "length of incarceration", "month to release", and "projected release date". Indeed, the BOP policy statement-authorizing staff to compute(times) the entire sentence (term of imprisonment) by 85% to determine the length of incarceration, months to release, and projected releaset date- created a liberty interest protected by due process since that policy provided an expectation to inmates by using mandatory language that limited BOP Staff discretion. **Id.**

Because Taylor had an expectation created by the BOP policy statement which required them to determine his "length of incarceration", "months to release" and "projected release date" by timing the sentence imposed with 85% then he was deprived of his right to due process since he had a liberty interest in such

policy, and method requirement. Thus, the BOP's failure to follow
it own policy statement to determine Taylor projected release
date and length of incarceration violated his rights to procedural
due process since the policy statement provided him a method that
could not be taken away. **Thompson, supra.**

Just as the BOP's failure to adhere to statute (§3624(b))
which mandated them to provide Taylor 54 days of good-time
credit towards the sentence imposed, and not the time actually
served, which further deprived him of his due process right.

According, the BOP should be order to adhere to both
statute 18 U.S.C. §3624(b) and its own policy statement 5100.07
which requires them to compute the 54 days of good-time credit
with the sentence impose, and compute by timing the sentence imposed
(twenty years- 240 months) with 85% to determine his release
date.

## VI.  Conclusion

WHEREFORE,  for the foregoing reasons, the Petitioner Kevin
Taylor respectfully requests this Honorable Court to GRANT him
habeas relief.

Respectfully submitted,

KEVIN TAYLOR
Reg. No. 03421-068
Devens- FMC
P. O. Box 879
Ayer, MA 01432

23.

## VII.  Verification

I,  Kevin Taylor, hereby  declare (or certify,  verify or state) that the foregoing is true and correct to the best of my knowledge or information and belief and that any false statements made therein are made subject to the penalties or application laws relating to unsworn falsifications to authorities.

Executed on: _____, 2005.

_____
Kevin Taylor

24.