UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KEVIN TAYLOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-10221-DPW |
| | ) |
| DAVID L. WINN, Warden, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM IN SUPPORT OF THE DEFENDANT'S
MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

The respondent, David L. Winn, Warden for the Federal Medical Center Devens, Ayer, Massachusetts ("FMC Devens"), respectfully requests that this Court dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as the petitioner has failed to state a claim upon which relief can be granted.

**STATEMENT OF FACTS**[1]

The petitioner, Kevin Taylor, Register Number 03421-068, is a federal inmate currently incarcerated at the FMC Devens. See **Document 1a**, Admission-Release History, p. 1, attached to the Declaration of FMC Devens Paralegal Specialist Stephanie Scannell.[2] On June 28, 1989, the petitioner was sentenced in the

---

[1] In accordance with the standard of review upon a motion to dismiss, the well-pleaded factual allegations of the petition are accepted as true for purpose of this motion. See <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 255 (1st Cir.1994).

[2] The Scannell Declaration is attached as Exhibit 1.

United States District Court for the Western District of Pennsylvania to a twenty (20) year term of incarceration with a three year term of supervised release to follow for conspiracy to possess with intent to distribute and distribution of 3-methyl-fentanyl, in violation of 21 U.S.C. § 846; and possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C).  See **Document 1b,** Judgment and Commitment Order ("J & C").  In addition, the Court ordered the petitioner to "pay to the United States the sum of $10,150.00, consisting of a fine of $10,000.00 and a special assessment of $150.00."  Id. at p.5.

Assuming the petitioner is granted all remaining Good Conduct Time ("GCT") available to him under 18 U.S.C. § 3624(b), his projected statutory release date on this docket is June 26, 2006.  See **Document 1c**, Sentence Monitoring Computation Data.  In the event that all of his GCT is disallowed, his full term expiration date is January 4, 2009.  Id.

The petitioner has filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  The petitioner alleges that "the BOP has miscalculated the Petitioner's good time credit which they provided him only forty-seven (47) days instead of the fifty-four (54) days authorized by Congress."  See Petition, p.

2

4.[3]  Further, the petitioner claims that "the BOP should be prohibited from imposing the IFRP [Inmate Financial Responsibility Program] on [him] to pay the fine since the Court cannot delegate it the authority to do so, not does its (BOP) policy, or the facts of the case authorize[] such payment." Id. at p. 15.  As relief, the petitioner states that he "should be exempt from paying the [court ordered] fine when the government was ordered to pay such and the statute prohibit[s] the collecting of fine by the BOP." Ibid.  The petitioner also requests that "the BOP should be order[ed] to . . . compute the 54 days of good-time credit with the sentence impose[d]." Id. at p.23.

### ARGUMENT

I.    **The petitioner was not improperly placed in the Inmate Financial Responsibility Program ("IFRP"), and the Bureau of Prisons ("BOP") policy regarding IFRP is constitutional.**

The petitioner claims that "no statute was promulgated that indicate[s] or give[s] the BOP the authority to be a collection agent for the federal government, nor provide[s] the BOP the authority to impose adverse sanctions on inmates for failing to pay court imposed fines." See Petition, p. 5.  Further, he states that his placement "in a mandatory Inmate Financial Responsibility Program deprived him of his due process protected

---

[3]This Memorandum will refer to the petitioner's Petition for Writ of Mandamus as the "Petition."

3

liberty interest." Id. at p.7. These claims are without merit, as the petitioner was properly placed in the IFRP and the IFRP is constitutional.

The Victim and Witness Protection Act of 1982, the Victims of Crime Act of 1984, the Comprehensive Crime Control Act of 1984, and the Federal Debt Collection Procedures Act of 1990 require a diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations. See **Document 1r**, Program Statement 5380.07, Financial Responsibility Program, Inmate, § 1. In 1987, the BOP implemented the IFRP to provide inmates with an opportunity to set up a plan to help them meet their legitimate financial obligations. Id. The plan was designed with the intent to help inmates demonstrate responsible behavior by meeting their financial obligations. Id. The IFRP is codified at 28 C.F.R. § 545.10, et seq. During the classification process, staff assist inmates in developing a financial plan for meeting those obligations. See **Document 1r**, § 8. At subsequent program reviews, staff consider the inmate's efforts to fulfill those obligations as indicative of the inmate's acceptance and demonstrated level of responsibility. Id.

Under the IFRP, the inmate is responsible for making satisfactory progress in meeting his financial responsibility plan and for providing documentation of these payments to Unit staff. See **Document 1r**, § 8. Payments may be made from

4

institution resources or non-institution (community) resources. 28 C.F.R. § 545.11(b).  Ordinarily, the minimum payment for inmates like the petitioner, who are not assigned to work assignments in the Federal Prison Industries or UNICOR, is $25.00 per quarter.  28 C.F.R. § 545(b)(2).  However, this minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources.  Id.  An inmate may use non-institutional (community) resources to satisfy a financial obligation.  See **Document 1r**, § 8(b)(3)(a).  Ordinarily, these are "one-time" payments directly to the parties to whom the obligations are owed and are intended to satisfy obligations of significant amounts.  Id.

Participation in the IFRP, although highly encouraged, is not mandatory.  Inmates who refuse to participate in the IFRP are placed in "refusal status" and are precluded from receiving certain benefits.  See 28 C.F.R. § 545.11(d).  "Refusal status" is not a punitive category, and placement in this category will not result in the imposition of inmate discipline.  See 28 C.F.R. § 545.10, et seq.  An inmate's refusal to participate in the IFRP will result in the receipt by the inmate of not more than maintenance-level pay, removal from UNICOR, limitation of commissary privileges, and ineligibility for placement in a community-based program.  See 28 C.F.R. § 545.11(d)(3), (5), (6), and (7).

The petitioner's claim that his court-ordered financial obligations should not be paid via the IFRP lacks merit.  The petitioner's J & C from the District Court for the Western District of Pennsylvania ordered that he pay a fine of $10,000.00 and a special assessment of $ 150.00.  See **Document 1b**.  The J & C does not specifically state whether the money shall be paid immediately or according to specific instructions.  Id.  However, 18 U.S.C. §3572(d)(1) states that, "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." The petitioner's J & C did not provide for payment on a certain date, or set forth a payment schedule.  See **Document 1b**. Likewise, the BOP has no other evidence to indicate that the Court intended the petitioner's fine to be paid in any manner other than immediately.  Thus, the BOP accurately determined that the petitioner is subject to the IFRP in an effort to assist him in paying his court-ordered fine as soon as possible.

Currently, the petitioner has not yet paid his fine in full. See **Document 1s**, Inmate Financial Responsibility Data.  As such, he is subject to voluntary participation in the IFRP to assist him in meeting these court-ordered financial obligations.  See **Document 1r**.

In the petition, the petitioner states that "the Court also

6

ordered the sale of Petitioner's Sport Utility Vehicle ("SUV")
Chevy-Blazer valued at $ 8,000 to [pay] the fine." <u>See</u> Petition,
p. 3.  The petitioner further contends that "the government's
failure to pay the fine with the proceeds from the sale of [his]
vehicle as ordered by the Court was clearly a deprivation of
[his] due process protected "liberty interest" created by the
Court's Order. <u>See</u> Petition, p.10.  However, whether or not the
petitioner's assertions are true, they are not reflected in any
record provided to the BOP.  The fact remains that both the
petitioner's J & C and the letter from the U.S. Attorney's Office
indicate that the petitioner is subject to a $10,000.00 court-
ordered fine.  <u>See</u> **Document 1b**; <u>see also</u> **Document 1h**.  To date,
the petitioner has not made any significant attempt to pay his
fine, and has repeatedly been placed in IFRP Refuse status during
his incarceration.  <u>See</u> **Document 1e**.

The BOP's authority to collect money judgments has
repeatedly passed constitutional scrutiny because the IFRP serves
valid penological interests, and is consistent with the BOP's
authorization under the direction of the Attorney General to
provide for rehabilitation and reformation.  <u>See</u> <u>Johnpoll v.</u>
<u>Thornburgh</u>, 898 F.2d 849, 850 (2d Cir. 1990), <u>cert</u> <u>denied</u>, 198
U.S. 819 (1990)(Compelled participation in IFRP is
constitutional); <u>McGhee v. Clark</u>, 166 F.3d 884, 886 (7th Cir.
1999); <u>James v. Quinlan</u>, 866 F.2d 627, 630 (3d Cir. 1989); and,

Dorman v. Thornburgh, 955 F.2d 57, 58-59 (D.C.Cir. 1992).
Likewise, the depravation of benefits resulting from IFRP
"refusal status" does not suggest an "atypical or significant
hardship" on the inmate which could give rise to due process
protection.  Sandin v. Connor, 515 U.S. 472, 484 (1995).

The petitioner currently has a balance of $10,0000.00 on his
court-imposed fine.  See **Document 1s**.  Pursuant to 18 U.S.C. §
3572(d)(1), in the absence of any other direction, the sentencing
court has intended for the petitioner to pay this fine
"immediately."  Thus, the petitioner has been correctly subject
to the IFRP Program to assist him in meeting this court-ordered
obligation.  As previously discussed, the IFRP is a voluntary,
constitutional program within the BOP's authority designed to
help inmates demonstrate responsibility and meet their court-
ordered financial obligations.  As such, an inmate's
participation, or refusal, in the IFRP does not need to be
approved by the sentencing court.  The petitioner has repeatedly
refused to participate in the IFRP, has appropriately been placed
in refusal status, and is therefore subjected to being ineligible
to receive certain benefits as set forth in 28 C.F.R. § 545.11.

Accordingly, the petitioner's claim that "the BOP should be
prohibited from imposing the IFRP on [him] to pay the fine since
the Court cannot delegate it the authority to do so, not does its
(BOP) policy, or the facts of the case authorize[] such payment"

(Petition, p. 15) is without merit.  Such being the case, this portion of the petition should be dismissed.

**II.  The petitioner's GCT has been calculated in accordance with BOP policy, and this policy has been upheld by the United States Court Of Appeals for the First Circuit.**

The petitioner alleges that his "statutory and due process rights are being violated by the BOP's misinterpretation of 18 U.S.C. 3624(b), depriving him of eligibility for 54 days of good conduct time (GCT) credit for each year of his term of imprisonment to which he is statutorily entitled."  This argument lacks merit, as the BOP is calculating his GCT in accordance with 18 U.S.C. § 3624(b) and Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>, and their calculation has been upheld as reasonable by the United States Court of Appeals for the First Circuit.  <u>Perez-Olivio v. Chavez</u>, 2005 WL 31913 (1st Cir. 2005).

The federal statute governing GCT credits under the Violent Crime Control and Law Enforcement Act for all offenses committed after April 26, 1996, can be found at 18 U.S.C. § 3624(b).  The statute provides that "a prisoner who is serving a term of imprisonment of more than one year . . . , may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term . . . "

The statute specifically delegates to the BOP the duty to

award GCT.  18 U.S.C. § 3624(b).  BOP Program Statement 5880.28, Sentence Computation Manual CCCA, applies the statutory requirement set forth in 18 U.S.C. § 3624(b), and states that 54 days of GCT may be earned for each full year served, with the GCT award being prorated for the last partial year.  See **Document 1j**, pp. 1-40, 1-41.  Since GCT is awarded at the end of a full year served, GCT cannot be awarded to an inmate sentenced to exactly one year imprisonment.  See **Document 1j**, pp. 1-41, 1-45.  Rather, the shortest sentence for which GCT can be earned is a sentence of one year and a day.  See **Document 1j**, p. 1-45.  In order for an inmate to be imprisoned for exactly one year under the statute, they must have an original sentence of one year and 54 days imposed, since 54 days GCT are earned after the completion of one full year in confinement.  See **Document 1j**, p. 4-5.

Contrary to the petitioner's assertion, the BOP sentence computation is correct.  The petitioner has erroneously computed his GCT as being the length of his sentence (in years) multiplied by 54 days (7.25 year sentence x 54 days = 391.5 days).  This method is inconsistent with 18 U.S.C. § 3624(b) and Program Statement 5880.28, Sentence Computation Manual CCCA, which allow 54 days of GCT per year only for the time actually served.  The petitioner's computation of GCT is incorrect because under his formula, inmates would receive GCT credit for time not served as well as for time actually served.  Since GCT is awarded on a

10

yearly, ongoing basis, it logically follows that if a prisoner cannot receive their 54 days of GCT until after each year of the term of imprisonment, then a prisoner cannot receive any GCT for time not actually served.

The petitioner was sentenced on January 17, 2000, to an 87-month term of incarceration. <u>See</u> **Document 1c**. Because the petitioner will be receiving GCT credits of up to 54 days for each year served, he will not be serving the full 87 months in federal custody. <u>Id</u>. Indeed, the petitioner's sentence, minus the projected 341 days applicable GCT time, equals roughly 76 months. <u>Id</u>. Thus, assuming he is granted all GCT available to him from this time forward based on his time served, under 18 U.S.C. § 3624(b), his projected satisfaction date on this docket is May 9, 2006. <u>Id</u>.

To date, there are four circuit courts which have addressed the GCT issue, and all have upheld the BOP method of calculation. <u>See</u> <u>Perez-Olivio v. Chavez</u>, 2005 WL 31913 (1st Cir. 2005); <u>White v. Scibana</u>, 390 F.3d 997 (7th Cir. 2004); <u>Pacheco-Camacho v. Hood</u>, 272 F.3d 1266 (9th Cir. 2001), <u>cert</u>. <u>denied</u> 535 U.S. 1105 (2002); <u>Brown v. Hemingway</u>, 53 Fed. Appx. 338, 2002 WL 31845147 (6th Cir. 2002); <u>Williams v. LaManna</u>, 20 Fed. Appx. 360, 2001 WL 1136069 (6th Cir. 2001).

The U.S. Court of Appeals for the First Circuit found "the GCT statute to be ambiguous under <u>Chevron v. U.S.A., Inc. v.</u>

<u>Natural Res. Def. Council, Inc</u>., 467 U.S. 837 (1984), and the BOP's interpretation reasonable." <u>Perez-Olivio v. Chavez</u>, 2005 WL 31913 at *1, (1st Cir. 2005). The Court determined that "the phrase 'term of imprisonment' is used inconsistently throughout 18 U.S.C. § 3624." <u>Id</u>. at *3. They also stated that "the legislative history of the GCT statute at issue in this case does not indicate any congressional intent to calculate GCT based on 'time served' or 'sentence imposed.'" <u>Id</u>. Thus, "having determined that § 3624(b)(1) is ambiguous," the Court moved to the second step of the <u>Chevron</u> analysis to determine if the BOP's interpretation was reasonable. <u>Id</u>. at *5. According to the Court, the language in the statute referring to the award of credit at the end of each year "is a clear congressional directive that the BOP look retroactively at a prisoner's conduct over the prior year, which makes it reasonable for the BOP only to award GCT for time served." <u>Id</u>. at *6.

Almost a month before the First Circuit's decision, the U.S. Court of Appeals for the Seventh Circuit examined the GCT issue in <u>White v. Scibana</u>, 390 F.3d 997 (7th Cir. 2004). In that opinion, the Court found § 3624(b) to be ambiguous, and "defer[red] to the Bureau's reasonable interpretation of the statute, which awards the credit for each year served in prison rather than each year of the sentence imposed." <u>Id</u>. at *1002, 1003.

In Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001), a federal prisoner challenged the BOP's policy of awarding a prorated amount of GCT for the last partial year an inmate served toward his sentence.  The Ninth Circuit held that the BOP's regulation basing the computation of GCT on time actually served rather than the sentence imposed fell within the implied statutory authority of the BOP.  Id. at 1270.  The court concluded that the BOP's regulations which based the proration of GCT upon time served (as opposed to sentence imposed) were reasonable, and thus, entitled to deference.  Id. at 1270-71.

The U.S. Court of Appeals for the Sixth Circuit, in two unpublished opinions, also endorsed the calculation of GCT by the BOP, and rejected inmate challenges similar to those posed by the petitioner in this instant case.  In Williams, supra, (decided two months before Pacheco, supra), the prisoner attempted to make the exact same argument as the petitioner in arguing that the statute "should be interpreted to allow him good conduct time credits for the entirety of the sentence that was imposed upon him rather than for the actual time of incarceration."  Williams at 360.  The Sixth Circuit rejected this claim, finding that under 18 U.S.C. § 3624(b), "[t]he statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate."  2001 WL 1136069 at **1.

13

In <u>Brown</u>, <u>supra</u>, (decided one year after <u>Pacheco</u>, <u>supra</u>), the Sixth Circuit reached the same result.  The Court rejected an inmate's claim that GCT should be based on the sentence imposed, not time served, relying upon <u>Pacheco</u>, <u>supra</u>, and <u>Williams</u>, <u>supra</u>.  2002 WL 31845147 at **1.  The Court conclusively determined that "[t]he Bureau's interpretation is reasonable in light of the statutory language." <u>Id</u>.

The petitioner's GCT is being calculated consistent with current BOP policy.  Thus, due to the mandatory and persuasive authority upholding the BOP's calculation of GCT, the petitioner's argument holds no merit.  Therefore, the GCT portion of this petition should be dismissed.

**CONCLUSION**

For the reasons discussed above, the petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 should be dismissed.

                              Respectfully submitted,

                              UNITED STATES OF AMERICA
                              By its attorney,

                              MICHAEL J. SULLIVAN
                              United States Attorney

Dated March 14, 2005      By:  /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              Suite 9200
                              1 Courthouse Way
                              Boston, MA 02210
                              (617) 748-3100

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served by first class mail, postage prepaid, upon the *pro se* plaintiff:

Kevin Taylor, Inmate
Federal Registry No. 03421-068
Federal Medical Center Devens
P.O. Box 879
Ayer, MA 01432

Dated: March 14, 2005        /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney

15

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN TAYLOR,                          )
      Petitioner,                 )
                                )
          v.                       )          Civ. Action No. 03-CV-10221
                                )
DAVID WINN                             )
      Respondent.                 )
                                )

## DECLARATION OF STEPHANIE SCANNELL

I, Stephanie Scannell, hereby make the following declaration:

1.      I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice as a Paralegal Specialist at the Consolidated Legal Center located at the Federal Medical Center (FMC) in Devens, Massachusetts. I have been employed at this position since approximately March 9, 2003, and have been with the BOP since approximately October 6, 2002.

2.      In order to perform my official duties as Paralegal Specialist, I have access to numerous records regarding prisoners maintained in the ordinary course of business at FMC Devens. This information includes documentary records and computerized records maintained on the Bureau of Prisons computerized data base.

3.      I have reviewed the petition filed by Kevin Taylor, Register Number 03421-068, in which he challenges the Bureau of Prisons' calculation of his good conduct time, as well as his placement and status in the Inmate Financial Responsibility Program (IFRP).

4.      Attached hereto, please find true and correct copies of the following documents:
      a.      Inmate History, ADM-REL, for Inmate Kevin Taylor, Reg. No. 03421-068;
      b.      Judgment and Commitment Order (attached in relevant part);
      c.      Sentence Monitoring Computation Data for Inmate Kevin Taylor, Reg. No. 03421-068, dated March 3, 2005;
      d.      Sentence Monitoring Good Time Data for Inmate Kevin Taylor, Reg. No. 03421-068, dated March 3, 2005;
      e.      Inmate Financial Responsibility History for Inmate Kevin Taylor, Reg. No. 03421-068, dated March 3, 2005;
      f.      Memorandum from W.H.Whited, Acting A-Unit Manager, to John V. Rowe, Associate Warden (Programs);

Page 1 of 2

g.    Memorandum for the File from L.Morello, Unit 4 Counselor;
h.    Letter dated March 21, 2001, from the United States Attorneys Office for the
       Western District of Pennsylvania;
i.     Memorandum for Kevin Taylor from Counselor J. Nelson;
j.     Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u> (attached in
       relevant part);
k.    Inmate Disciplinary History for Inmate Kevin Taylor, Reg. No. 03421-068, dated
       March 3, 2005;
l.     Request for Administrative Remedy, Case Number 331704-F1, and Response;
m.    Administrative Remedy Appeal, Case Number 331704-R1, and Response;
n.    Administrative Remedy Appeal, Case Number 331704-A3, and Response;
o.    Request for Administrative Remedy, Case Number 335328-F1, and Response;
p.    Administrative Remedy Appeal, Case Number 335328-R1, and Response;
q.    Administrative Remedy Appeal, Case Number 335328-A1, and Response;
r.     Program Statement 5380.07, <u>Financial Responsibility Program, Inmate</u>;
s.     Inmate Financial Responsibility Data for Inmate Kevin Taylor, Reg. No. 03421-
       068, dated March 3, 2005.


I declare the foregoing is true and correct to the best of my knowledge and belief, and given
under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this _5_ day of March 2005

                                    Stephanie J. Scannell
                                    Paralegal Specialist
                                    FMC Devens

# EXHIBIT 1a

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
CATEGORY: ARS          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP | DATE/TIME |
|-----|-----------|-------------|-----------------|------|-----------|
| DEV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-11-2005 1208 | CURRENT | |
| DEV | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 02-11-2005 0733 | 02-11-2005 | 1208 |
| DEV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 01-11-2005 1100 | 02-11-2005 | 0733 |
| DEV | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 01-11-2005 0733 | 01-11-2005 | 1100 |
| DEV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-21-2004 1133 | 01-11-2005 | 0733 |
| DEV | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 07-21-2004 0815 | 07-21-2004 | 1133 |
| DEV | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-31-2004 1006 | 07-21-2004 | 0815 |
| 5-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-31-2004 1006 | 03-31-2004 | 1006 |
| 5-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-31-2004 0443 | 03-31-2004 | 1006 |
| FTD | TRANSFER | TRANSFER | 03-31-2004 0443 | 03-31-2004 | 0443 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 11-01-2001 1725 | 03-31-2004 | 0443 |
| FTD | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 11-01-2001 1425 | 11-01-2005 | 1725 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-01-2001 0958 | 11-01-2001 | 1425 |
| S17 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-01-2001 0958 | 05-01-2001 | 0958 |

G0002          MORE PAGES TO FOLLOW . . . .

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
CATEGORY: ARS          FUNCTION: DIS        FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| S17 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-01-2001 0612 | 05-01-2001 0958 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 05-01-2001 0612 | 05-01-2001 0612 |
| LEW | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 04-26-2001 1705 | 05-01-2001 0612 |
| B01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-26-2001 1705 | 04-26-2001 1705 |
| B01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-26-2001 1530 | 04-26-2001 1705 |
| ALM | TRANSFER | TRANSFER | 04-26-2001 1530 | 04-26-2001 1530 |
| ALM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 01-19-1999 1730 | 04-26-2001 1530 |
| 6-H | RELEASE | RELEASED FROM IN-TRANSIT FACL | 01-19-1999 1730 | 01-19-1999 1730 |
| 6-H | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 01-19-1999 0902 | 01-19-1999 1730 |
| CUM | TRANSFER | TRANSFER | 01-19-1999 0902 | 01-19-1999 0902 |
| CUM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-04-1997 1508 | 01-19-1999 0902 |
| CUM | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 02-04-1997 0900 | 02-04-1997 1508 |
| CUM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-22-1996 1952 | 02-04-1997 0900 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-22-1996 1952 | 07-22-1996 1952 |

G0002        MORE PAGES TO FOLLOW . . .

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
CATEGORY: ARS          FUNCTION: DIS          FORMAT:

```
FCL    ASSIGNMENT  DESCRIPTION                         START DATE/TIME STOP   DATE/TIME
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-22-1996 0809 07-22-1996 1952
LEW    HLD REMOVE  HOLDOVER REMOVED                    07-22-1996 0809 07-22-1996 0809
LEW    A-HLD       HOLDOVER, TEMPORARILY HOUSED        07-17-1996 1804 07-22-1996 0809
S05    RELEASE     RELEASED FROM IN-TRANSIT FACL       07-17-1996 1804 07-17-1996 1804
S05    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-17-1996 1334 07-17-1996 1804
MCK    TRANSFER    TRANSFER                            07-17-1996 1334 07-17-1996 1334
MCK    A-DES       DESIGNATED, AT ASSIGNED FACIL       06-22-1993 1146 07-17-1996 1334
S01    RELEASE     RELEASED FROM IN-TRANSIT FACL       06-22-1993 1146 06-22-1993 1146
S01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 06-22-1993 0719 06-22-1993 1146
LEW    TRANSFER    TRANSFER                            06-22-1993 0719 06-22-1993 0719
LEW    A-DES       DESIGNATED, AT ASSIGNED FACIL       05-27-1992 1801 06-22-1993 0719
A02    RELEASE     RELEASED FROM IN-TRANSIT FACL       05-27-1992 1801 05-27-1992 1801
A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-27-1992 0730 05-27-1992 1801
ERE    HLD REMOVE  HOLDOVER REMOVED                    05-27-1992 0630 05-27-1992 0630
```

G0002        MORE PAGES TO FOLLOW . . .

REG NO..: 03421-068  NAME....: TAYLOR, KEVIN
  CATEGORY: ARS         FUNCTION: DIS        FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| ERE | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 05-22-1992 2100 | 05-27-1992 0630 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-22-1992 2200 | 05-22-1992 2200 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-22-1992 0930 | 05-22-1992 2200 |
| PHX | HLD REMOVE | HOLDOVER REMOVED | 05-22-1992 0630 | 05-22-1992 0630 |
| PHX | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 05-20-1992 1645 | 05-22-1992 0630 |
| B12 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-20-1992 1945 | 05-20-1992 1945 |
| B12 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-20-1992 1308 | 05-20-1992 1945 |
| LOS | HLD REMOVE | HOLDOVER REMOVED | 05-20-1992 1008 | 05-20-1992 1008 |
| LOS | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 05-19-1992 1944 | 05-20-1992 1008 |
| B12 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-19-1992 2244 | 05-19-1992 2244 |
| B12 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-19-1992 1821 | 05-19-1992 2244 |
| LOM | TRANSFER | TRANSFER | 05-19-1992 1521 | 05-19-1992 1521 |
| LOM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 04-02-1992 1421 | 05-19-1992 1521 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-02-1992 1721 | 04-02-1992 1721 |

G0002      MORE PAGES TO FOLLOW . . .

```
  REG NO..: 03421-068  NAME....: TAYLOR, KEVIN
  CATEGORY: ARS        FUNCTION: DIS        FORMAT:

FCL   ASSIGNMENT  DESCRIPTION                           START DATE/TIME STOP  DATE/TIME
A01   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-02-1992 0730 04-02-1992 1721
ERE   HLD REMOVE  HOLDOVER REMOVED               04-02-1992 0630 04-02-1992 0630
ERE   A-HLD       HOLDOVER, TEMPORARILY HOUSED   04-01-1992 1930 04-02-1992 0630
A01   RELEASE     RELEASED FROM IN-TRANSIT FACL  04-01-1992 2030 04-01-1992 2030
A01   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-01-1992 1146 04-01-1992 2030
LEW   HLD REMOVE  HOLDOVER REMOVED               04-01-1992 1146 04-01-1992 1146
LEW   A-HLD       HOLDOVER, TEMPORARILY HOUSED   03-27-1992 1458 04-01-1992 1146
5-P   RELEASE     RELEASED FROM IN-TRANSIT FACL  03-27-1992 1458 03-27-1992 1458
5-P   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 03-27-1992 1256 03-27-1992 1458
SCH   TRANSFER    TRANSFER                       03-27-1992 1256 03-27-1992 1256
SCH   A-DES       DESIGNATED, AT ASSIGNED FACIL  02-04-1992 1400 03-27-1992 1256
S03   RELEASE     RELEASED FROM IN-TRANSIT FACL  02-04-1992 1400 02-04-1992 1400
S03   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 02-04-1992 0615 02-04-1992 1400
RBK   TRANSFER    TRANSFER                       02-04-1992 0615 02-04-1992 0615


G0002      MORE PAGES TO FOLLOW . . .
```

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
CATEGORY: ARS        FUNCTION: DIS        FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|------------|-------------|-----------------|----------------|
| RBK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 08-12-1991 1803 | 02-04-1992 0615 |
| S02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 08-12-1991 1803 | 08-12-1991 1803 |
| S02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-12-1991 0552 | 08-12-1991 1803 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 08-12-1991 0552 | 08-12-1991 0552 |
| LEW | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 08-07-1991 1531 | 08-12-1991 0552 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 08-07-1991 1531 | 08-07-1991 1531 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-07-1991 0831 | 08-07-1991 1531 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 08-07-1991 0831 | 08-07-1991 0831 |
| ATL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 08-06-1991 1940 | 08-07-1991 0831 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 08-06-1991 1940 | 08-06-1991 1940 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-06-1991 0630 | 08-06-1991 1940 |
| ERE | HLD REMOVE | HOLDOVER REMOVED | 08-06-1991 0530 | 08-06-1991 0530 |
| ERE | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 08-01-1991 1330 | 08-06-1991 0530 |
| 3-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 08-01-1991 1430 | 08-01-1991 1430 |

G0002      MORE PAGES TO FOLLOW . . .

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
    CATEGORY: ARS        FUNCTION: DIS        FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | | STOP | DATE/TIME |
|-----|-----------|-------------|-----------------|--|------|-----------|
| 3-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-01-1991 | 0804 | 08-01-1991 | 1430 |
| LVN | TRANSFER | TRANSFER | 08-01-1991 | 0704 | 08-01-1991 | 0704 |
| LVN | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-15-1990 | 1300 | 08-01-1991 | 0704 |
| PIT | RELEASE | RELEASED FROM IN-TRANSIT FACL | 02-15-1990 | 1400 | 02-15-1990 | 1400 |
| PIT | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 11-03-1989 | 0333 | 02-15-1990 | 1400 |
| I-T | RELEASE | RELEASED FROM IN-TRANSIT FACL | 11-03-1989 | 0333 | 11-03-1989 | 0333 |
| I-T | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-04-1989 | 0859 | 11-03-1989 | 0333 |
| LVN | IAD | INTERSTATE AGRMNT ON DETAINERS | 10-04-1989 | 0759 | 02-15-1990 | 1300 |
| LVN | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-25-1989 | 1339 | 10-04-1989 | 0759 |
| S01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-25-1989 | 1439 | 07-25-1989 | 1439 |
| S01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-25-1989 | 0700 | 07-25-1989 | 1439 |
| ERE | HLD REMOVE | HOLDOVER REMOVED | 02-15-1990 | 0600 | 08-01-1991 | 0600 |
| ERE | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 07-20-1989 | 1955 | 07-25-1989 | 0600 |
| I-T | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-20-1989 | 2055 | 07-20-1989 | 2055 |

G0002      MORE PAGES TO FOLLOW . . .

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
CATEGORY: ARS          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| I-T | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-10-1989 1004 | 07-20-1989 2055 |
| CPG | ADMIN REL | ADMINISTRATIVE RELEASE | 07-10-1989 1004 | 07-10-1989 1004 |
| CPG | A-ADMIN | ADMINISTRATIVE ADMISSION | 07-10-1989 0959 | 07-10-1989 1004 |

G0005'        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# EXHIBIT 1b

AO 245 S (3/88) Sheet 1 - Judgment Including Sentence Under the Sentencing Reform Act

# United States District Court

_____WESTERN_____ District of ____PENNSYLVANIA____

UNITED STATES OF AMERICA

v.

KEVIN TAYLOR

**JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT**

Case Number    89-9 Criminal

(Name of Defendant)

Charles F. Scarlata, Esq.

Defendant's Attorney

THE DEFENDANT:

☒ pleaded guilty to count(s) __1, 8 and 9__
☐ was found guilty on count(s) _____ after a
plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Count Number(s) |
| --- | --- | --- |
| 21 USC 846 | Conspiracy to possess with intent to distribute and to distribute 3-methyl-fentanyl | 1 |
| 21 USC 841(a)(1) & 841(b)(1)(C) | Possess with intent to distribute and distribute heroin | 8 & 9 |

The defendant is sentenced as provided in pages 2 through __5__ of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____,
and is discharged as to such count(s).
☒ Count(s) _2,3,4,5,6,7,10, and 11_____(is)(are) dismissed on the motion of the United States.
☒ The mandatory special assessment is included in the portion of this Judgment that imposes a fine.
☐ It is ordered that the defendant shall pay to the United States a special assessment of $ _____,
which shall be due immediately.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec. Number:
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

Defendant's mailing address:
_____
_____

Defendant's residence address:
_____
_____

June 28, 1989
Date of Imposition of Sentence

_____
Signature of Judicial Officer

Donald E. Ziegler,
United States District Judge
Name & Title of Judicial Officer

June 29, 1989
Date

AO 245 S (3/88) Sheet 2 - Imprisonment

Defendant: KEVIN TAYLOR                                    Judgment—Page 2 of 5
Case Number: 89-9 Criminal

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of _____ years

This term consists of terms of 20 years on each of Counts 1, 8 and 9, all to be served concurrently.

☐ The Court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district,

    ☐ at _____ a.m. p.m. on _____.

    ☐ as notified by the Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

    ☐ before 2 p.m. on _____.

    ☐ as notified by the United States Marshal.
    ☐ as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on 7-25-89 to USP Leavenworth ___ at _____, with a certified copy of this Judgment.

ROBERT L. MATTHEWS
United States Marshal WARDEN

By _____
Deputy Marshal
LEGAL TECHNICIAN

AO 245 S (3/88) Sheet 3 - Supervised R    e

Judgment—Page __3__ of __5__

Defendant: KEVIN TAYLOR
Case Number: 89-9 Criminal

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 3

years

This term consists of terms of three years on each of Counts 1, 8 and 9, all to be served concurrently.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

That the defendant participate in a drug treatment program as recommended by the Probation Office.

That the defendant participate in a program of mental health counseling as recommended by the Probation Office.

That the defendant not use, own, possess, or carry a firearm.

That the defendant not use or possess any illegal drugs, narcotic substances, and/or drug paraphernalia, nor is he to be in those places known to traffic in illegal drugs.

7-25-89        USP LEAVENWORTH

ROBERT L MATTHEWS
WARDEN

AO 245 S (3/88) Sheet 5 - Standard Cond.   . of Probation

Judgment—Page ___4___ of ___5___

Defendant: KEVIN TAYLOR
Case Number: 89-9 Criminal

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;

2) the defendant shall not leave the judicial district without the permission of the court or probation officer;

3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5) the defendant shall support his or her dependents and meet other family responsibilities;

6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

AO 245 S (3/88) Sheet 6 - Fine With Spec. Assessment

Judgment—Page __5__ of __5__

Defendant: KEVIN TAYLOR
Case Number: 89-9 Criminal

## FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ _10,150.00_ , consisting of a fine of $ _10,000.00_ and a special assessment of $ _150.00_ .

☒ These amounts are the totals of the fines and assessments imposed on individual counts, as follows:

$50.00 Special assessment on each of Counts 1, 8 and 9.

This sum shall be paid ☐ immediately.
☐ as follows:

☐ The Court has determined that the defendant does not have the ability to pay interest. It is ordered that:

☐ The interest requirement is waived.
☐ The interest requirement is modified as follows:

CERTIFIED FROM THE RECORD
Date:
CATHERINE D. MA
By

# EXHIBIT 1c

Case 3:05-cv-10221-DPW   Document 5-2   Filed 03/14/2005   Page 20 of 60

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS

FBI NO...........: 22903K4                  DATE OF BIRTH: 09-17-1955
ARS1.............: DEV/A-DES
UNIT.............: J SOMP                    QUARTERS.....: J04-421U
DETAINERS........: NO                        NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 12-26-2005

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  06-26-2006 VIA GCT REL




G0002      MORE PAGES TO FOLLOW . . .

DEVAA    Case 1:05-cv-10221-DPW   SEPPENTENTION Filed 03/14/2005    Page 21 of 60 -03-2005
PAGE 002       *          COMPUTATION DATA          *    14:33:02
                         AS OF 03-03-2005

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010      ALL CURR COMPS(Y/N): Y    ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: PENNSYLVANIA, WESTERN DISTRICT
DOCKET NUMBER...................: 89-9 CRIMINAL
JUDGE...........................: ZIEGLER
DATE SENTENCED/PROBATION IMPOSED: 06-28-1989
DATE COMMITTED..................: 07-25-1989
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS   MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.:   $150.00       $00.00        $10,000.00    $00.00

RESTITUTION...: PROPERTY:   NO   SERVICES:   NO      AMOUNT:   $00.00

G0002      MORE PAGES TO FOLLOW . . .

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010      ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391
OFF/CHG: CONSPIRACY TO POSSESS W/I TO DIST AND DIST 3-METHYL-FENTANYL,
         21:846; POSS W/I TO DIST & DIST HEROIN, 21:841(A)(1),(B)(1)(C)

 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:     20 YEARS
 TERM OF SUPERVISION............:      3 YEARS
 CLASS OF OFFENSE...............: CLASS C FELONY
 DATE OF OFFENSE................: 01-05-1989


G0002      MORE PAGES TO FOLLOW . . .

Case 1:05-cv-10221-DPW   Document 5-2   Filed 03/14/2005   Page 23 of 60

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS


REMARKS.......: ARRESTED 01-05-1989 AND REMAINED IN CONTINUOUS CUSTODY.
                SENTENCED 06-28-1989 TO 20 YEARS IMPRISONMENT AND 3 YEARS
                SUPERVISED RELEASE ON COUNTS 1, 2 & 9, CONCURRENT.   A
                $10,000.00 NON COMMITTED FINE ORDERED & $50 NON-COMMITTED
                ASSESSMENT ON EACH COUNT, TOTAL ASSESSMENT $150.

------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-17-2001 AT FTD AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010


G0002       MORE PAGES TO FOLLOW . . .

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS

DATE COMPUTATION BEGAN..........: 06-28-1989
TOTAL TERM IN EFFECT............:   20 YEARS
TOTAL TERM IN EFFECT CONVERTED..:   20 YEARS
EARLIEST DATE OF OFFENSE........: 01-05-1989

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    01-05-1989     06-27-1989

TOTAL PRIOR CREDIT TIME.........: 174
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 923
TOTAL GCT EARNED................: 844
STATUTORY RELEASE DATE PROJECTED: 06-26-2006
SIX MONTH /10% DATE.............: N/A

G0002        MORE PAGES TO FOLLOW . . .

Case 1:05-cv-10221-DPW   Document 5-2   Filed 03/14/2005   03-03-2005

REGNO..: 03421-068 NAME: TAYLOR, KEVIN
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS

EXPIRATION FULL TERM DATE.......: 01-04-2009

PROJECTED SATISFACTION DATE.....: 06-26-2006
PROJECTED SATISFACTION METHOD...: GCT REL

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# EXHIBIT 1d

```
REGNO...: 03421-068    NAME: TAYLOR, KEVIN
ARS 1...: DEV A-DES                                                 SRA
COMPUTATION NUMBER..: 010                        FUNC..: DIS    ACT DT:
LAST UPDATED:  DATE.: 07-17-2001                 FACL..: FTD     CALC: AUTOMATIC
UNIT................: J SOMP                      QUARTERS............: J04-421U
DATE COMP BEGINS....: 06-28-1989                 COMP STATUS.........: COMPLETE
TOTAL JAIL CREDIT...: 174                         TOTAL INOP TIME.....: 0
CURRENT REL DT......: 09-13-2006 WED              EXPIRES FULL TERM DT: 01-04-2009
PROJ SATISFACT DT...: 06-26-2006 MON              PROJ SATISF METHOD..: GCT REL
ACTUAL SATISFACT DT.:                             ACTUAL SATISF METHOD:
DAYS REMAINING......:                             FINAL PUBLC LAW DAYS:
```

--------------------------GOOD CONDUCT TIME AMOUNTS--------------------------

| START DATE | STOP DATE | MAX POSSIBLE TO DIS | FFT | ACTUAL TOTALS DIS | FFT | VESTED AMOUNT | VESTED DATE |
|---|---|---|---|---|---|---|---|
| 01-05-1989 | 01-04-1990 | 54 | 0 | | | 54 | 01-19-1990 |
| 01-05-1990 | 01-04-1991 | 54 | 0 | | | 54 | 01-19-1991 |

G0002       MORE PAGES TO FOLLOW . . .

DEVAA    Case 1:05-cv-10221-DPW    Document 5-2    Filed 03/14/2005    Page 28 of 60 03-03-2005
PAGE 002            *                    GOOD TIME DATA                  *         14:35:07
                                    AS OF   03-03-2005

REGNO...: 03421-068    NAME: TAYLOR, KEVIN
ARS 1...: DEV A-DES                                                SRA
COMPUTATION NUMBER..: 010                          FUNC..: DIS    ACT DT:
LAST UPDATED:  DATE.: 07-17-2001                   FACL..: FTD    CALC: AUTOMATIC

--------------------------GOOD CONDUCT TIME AMOUNTS--------------------------

| START<br>DATE | STOP<br>DATE | MAX<br>DIS | POSSIBLE TO<br>FFT | ACTUAL TOTALS<br>DIS    FFT | VESTED<br>AMOUNT | VESTED<br>DATE |
|---|---|---|---|---|---|---|
| 01-05-1991 | 01-04-1992 | 54 | 0 | | 54 | 01-19-1992 |
| 01-05-1992 | 01-04-1993 | 54 | 0 | 20 | 34 | 01-19-1993 |
| 01-05-1993 | 01-04-1994 | 54 | 0 | | 54 | 01-19-1994 |
| 01-05-1994 | 01-04-1995 | 54 | 0 | | 54 | 01-19-1995 |
| 01-05-1995 | 01-04-1996 | 54 | 0 | | 54 | 01-19-1996 |
| 01-05-1996 | 01-04-1997 | 54 | 0 | | 54 | 01-19-1997 |
| 01-05-1997 | 01-04-1998 | 54 | 0 | | 54 | 01-19-1998 |
| 01-05-1998 | 01-04-1999 | 54 | 0 | | 54 | 01-19-1999 |
| 01-05-1999 | 01-04-2000 | 54 | 0 | | 54 | 01-19-2000 |

G0002        MORE PAGES TO FOLLOW . . .

```
REGNO...: 03421-068    NAME: TAYLOR, KEVIN
ARS 1...: DEV A-DES                                    SRA
COMPUTATION NUMBER..: 010                FUNC..: DIS   ACT DT:
LAST UPDATED:  DATE.: 07-17-2001         FACL..: FTD      CALC: AUTOMATIC

------------------------GOOD CONDUCT TIME AMOUNTS------------------------

   START        STOP      MAX POSSIBLE TO      ACTUAL TOTALS    VESTED     VESTED
   DATE         DATE      DIS   FFT        DIS     FFT          AMOUNT      DATE
 01-05-2000  01-04-2001    54    0                                 54   01-19-2001
 01-05-2001  01-04-2002    54    0                                 54   01-19-2002
 01-05-2002  01-04-2003    54    0                                 54   01-19-2003
 01-05-2003  01-04-2004    54    0                                 54   01-19-2004
 01-05-2004  01-04-2005    54    0                                 54   01-19-2005
 01-05-2005  01-04-2006    54
 01-05-2006  06-26-2006    25

     TOTAL EARNED AMOUNT.........................................:      844

G0002       MORE PAGES TO FOLLOW . . .
```

REGNO...: 03421-068    NAME: TAYLOR, KEVIN
ARS 1...: DEV A-DES                                       SRA
COMPUTATION NUMBER..: 010                   FUNC..: DIS   ACT DT:
LAST UPDATED:  DATE.: 07-17-2001            FACL..: FTD      CALC: AUTOMATIC

     TOTAL EARNED AND PROJECTED AMOUNT............................:       923


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# EXHIBIT 1e

REG NO..: 03421-068 NAME....: TAYLOR, KEVIN
    CATEGORY: FRP          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| DEV | REFUSE | FINANC RESP-REFUSES | 06-01-2001 0942 | CURRENT |
| FTD | NO OBLG | FINANC RESP-NO OBLIGATION | 04-20-1995 0956 | 06-01-2001 0942 |
| MCK | REFUSE | FINANC RESP-REFUSES | 07-21-1993 0838 | 04-20-1995 0956 |
| MCK | PART | FINANC RESP-PARTICIPATES | 08-06-1992 0953 | 07-21-1993 0838 |
| LEW | REFUSE | FINANC RESP-REFUSES | 04-13-1992 1734 | 08-06-1992 0953 |
| LOM | PART | FINANC RESP-PARTICIPATES | 04-22-1991 1228 | 04-13-1992 1734 |
| LVN | REFUSE | FINANC RESP-REFUSES | 03-30-1991 2122 | 04-22-1991 1228 |
| LVN | PART | FINANC RESP-PARTICIPATES | 03-29-1990 0927 | 03-30-1991 2122 |
| LVN | UNASSG | FINANC RESP-UNASSIGNED | 07-10-1989 0959 | 03-29-1990 0927 |

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# EXHIBIT 1f

U ,ED STATES GOVERNMENT

# memorandum

DATE: July 9, 1990

REPLY TO
ATTN OF: W. H. Whited, Acting A-Unit Manager

SUBJECT: **TAYLOR, Kevin**
**Reg. No. 03421-068**

TO: John V. Rowe, Associate Warden (Programs)

United States Penitentiary
Leavenworth, Kansas  66048

The purpose of this memorandum is to request the above referenced individual be placed on "Refused Status", regarding his financial responsibility, as a result of his refusal to re-enter general population.  On May 1, 1990, Mr. Taylor was informed his refusal to pay his financial obligation would exempt him from earning above Maintenance Pay Grade and prohibit him from obtaining employment in UNICOR.  Records indicate Mr. Taylor has failed to make a payment towards his financial obligation.  The Unit Team recommends he be maintained on "Refused Status" until such time as he satisfactorily addresses his financial obligations.

APPROVED: _____
           John V. Rowe, Associate Warden (Programs)

# EXHIBIT 1g

UNITED STATES GOVERNMENT

# memorandum

DATE:   04-20-95

REPLY TO
ATTN OF:   L. MORELLO, UNIT 4 COUNSELOR

SUBJECT:   TAYLOR, KEVIN
           #03421-068

TO:   CENTRAL FILE


PLEASE BE ADVISED THAT THE ABOVE NAMED INDIVIDUAL IS CURRENTLY IN THE
"NO OBLIGATION" STATUS CONCERNING HIS FINACIAL OBLIGATION DUE THE FACT
THAT THE J&C DOES NOT SPECIFICALLY STATE THAT HE IS TO PAY HIS FINE
WHILE INCARCERATED.

ON 4-20-95, I CONTACTED THE U.S. ATTORNEY WESTERN DISTRICT OF PENNSYLVANIA
AND SPOKE TO MS. SUE DEMERSKI (FIN. LIT. AGENT).  SHE INDICATED THAT HER
OFFICE CONTACTED THE JUDGE'S CHAMBERS AND THEY STATED THAT THEY WOULD NOT
AMMEND THE J&C WITHOUT A COURT ORDER.  THE U.S. ATTORNEY IS CURRENTLY IN THE
PROCESS OF DOING THIS.  IN THE MEAN TIME, HE IS TO REMAIN IN THE "NO OBLIGATION"
STATUS UNTIL WE RECEIVE THE NEW J&C.

# EXHIBIT 1h



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

---

*Financial Litigation Unit*
*633 United States Post Office & Courthouse*
*Pittsburgh, Pennsylvania 15219*

*412/644-3500*
*FAX(412)644-5870*

March 21, 2001

Kevin Taylor
Register No. 03421-068
Allenwood Medical FCI
P.O. Box 2500
White Deer, PA 17887

Re:   United States of America v. Kevin Taylor
       Court No. 89-9,  USAO No. 1989000054

Dear Mr. Taylor:

On March 19, 2001, your case manager, Robert Wenner, called me regarding the $10,000.00 fine you were ordered to pay in the above entitled action. He explained that it is your position that you do not have to pay the fine until you are released from incarceration because the Court Order does not specifically state that you have to pay the fine while you are incarcerated.

Pursuant to 18 U.S.C. § 3572 (d), a fine is due immediately unless the Court provides for payment on a date certain or in installments.  Since there is no evidence in the record that the Court provided for payment on a date certain or in installments, it has been, and still is, the position of the United States that the fine is due immediately.

The Motion to Modify Sentence your attorney filed in September, 1995 was denied, as was the appeal you filed on December 15, 1995. More recently, the Supreme Court declined to hear your case. In effect, the appeal process has ended and the fine is now due.

In 1993, you made two payments of $25.00 each toward the fine. Demand is now made for payment of the balance due, which is $9,950.00 as of the date of this letter.

Your cashier's check or money order should be marked with Court No. 89-9 and mailed to the U.S. Clerk of Court, P.O. Box 1805, Pittsburgh, PA 15230. If you cannot pay the amount in full, payments will be accepted through the Bureau of Prisons' Inmate Financial Responsibility Program. Until the fine is paid in full, you are liable to make payments on it not only throughout your incarceration, but also for 20 years after you are released, as set forth in 18 U.S.C. § 3613(b).

Very truly yours,

HARRY LITMAN
United States Attorney

*Gail K. Ward*

GAIL M. WARD
Financial Litigation Agent

cc:    R. Wenner, Case Manager

# EXHIBIT 1i



**U.S. Departmen.. of Justice**

Federal Bureau of Prisons

*Federal Medical Center, Devens*

---

*P.O. Box 880*
*Ayer, MA 01432*

July 15, 2004

## MEMORANDUM FOR TAYLOR, KEVIN #03421-068

**FROM: J. NELSON - COUNSELOR J Unit**

**SUBJECT:    FINANCIAL RESPONSIBILITY PROGRAM STATUS - <u>REFUSAL</u>**

You have refused to participate in the Inmate Financial Responsibility Program (IFRP). In accordance with Program Statement 5380.07, Inmate Financial Responsibility Program, the following restrictions are to be enforced:

1.    You will not receive Performance Pay above the Maintenance Pay level of $5.25 per month. You will not receive a Vacation. You will not receive bonus pay or any monetary special awards. As applicable, you are restricted from being a Unit Orderly.

2.    Effective immediately, you are limited to spending no more that $25.00 per month in the Commissary. You are also restricted from making Special Purchases. This monthly Commissary spending limitation is more stringent that the monthly Commissary spending limitation set for all other inmates.

3.    Effective immediately, you will be quartered in the lowest housing status. You are restricted from occupying a bottom bunk unless you have an official permanent medical bottom bunk slip. Should you be given a temporary bottom bunk slip, you will be immediately moved from the bottom bunk upon expiration of the slip. Given your lowest housing status, you are subject to move as unit housing needs deem necessary.

4.    You will not be considered or placed in such Community Based Programs as Satellite Camp placement of Community Treatment Center Placement (a.k.a.: Halfway House). In addition, you will be considered for emergency medical furloughs only.

5.    You will not receive a Release Gratuity.

6.    This will effect your eligibility for participation in the Residential Drug Abuse Program (RDAP). You will be ineligible to participate in RDAP early release incentives and Halfway House placement.

7.    Your Custody Classification Form (BP-15) has been changed to reflect "poor" responsibility. This change will result in the addition of 2 - 4 points to your current BP-15 point level.

8.  The U.S. Probation Department will be notified of your failure to participate in the FRP Program. Such notification may adversely affect your current Parole eligibility status.

9.  As applicable, the U.S. Parole Commission will be notified of your failure to participate in the FRP Program. Such notification may adversely affect your current Parole eligibility status.

10. You will not be considered for a "Nearer Release" transfer, if otherwise eligible.

Please note that the above restrictions will remain in effect until the next FRP payment is due or until you adequately demonstrate your willingness to pay your financial obligations in accordance with established guidelines.

Should you have any questions regarding the aforementioned, please see your assigned Unit Counselor.


cc:  Central File
     RDAP Coordinator
     Business Office/Commissary
     Work Detail Supervisor

# EXHIBIT 1j



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD
**NUMBER:** 5880.28
**DATE:** CN-06, 7/19/99
**SUBJECT:** Sentence Computation
Manual (CCA of 1984)

1.  **PURPOSE AND SCOPE.**  This Program Statement transmits the
"Sentence Computation Manual" which establishes the policies and
procedures for the computation of sentences imposed for
violations of the United States Code under the statutes of the
Comprehensive Crime Control Act of 1984 (CCCA).

On October 12, 1984, President Reagan signed the Comprehensive
Crime Control Act of 1984 (CCCA) into law.  Two major components
of this law, the Sentencing Reform Act of 1984 (SRA) and the
Insanity Reform Act of 1984, completely restructured the
sentencing guidelines and policies of the United States Courts.

After the effective date of the SRA on November 1, 1987, a number
of United States Court decisions found all or parts of the SRA
unconstitutional.  As a result, the SRA was implemented
nationally in various ways.

On January 18, 1989, in **Mistretta v. U.S.**, the Supreme Court
considered the constitutionality of the sentencing guidelines and
ruled that the guidelines were constitutional.  This Manual
provides instructions for computing sentences imposed under the
CCCA both before and after the **Mistretta** decision.

2.  **DIRECTIVES AFFECTED**

    a.  **Directives Rescinded.**  None.

    b.  **Directives Referenced.**  None.

P.S. 5880.28
February 21, 1992
Page 1 - 40

         **g.  Good Conduct Time.**  Subsection 3624(b) states, "(b) Credit toward service of sentence for satisfactory behavior.-- A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner.  If the Bureau determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  The Bureau's determination shall be made within fifteen days after the end of each year of the sentence.  Such credit toward service of sentence vests at the time it is received.  Credit that has been vested may not later be withdrawn, and credit that has not been earned may not later be granted.  Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

         For computation purposes, it is necessary to remember the following about subsection 3624(b):

         (1)  54 days of GCT may be earned for each full year served on a sentence in excess of one year, with the GCT being

prorated for the last partial year.  No GCT can be earned on, or awarded to, a sentence of one year or less.

(2)   The BOP has 15 days after the end of each full year served to make a determination as to the amount of the 54 days that shall be awarded.  If the BOP makes no decision about the amount of GCT to award in the 15 days at the end of the year just served, then the entire 54 days will be automatically credited to the sentence on the Vested Date.  Therefore, before awarding any GCT on the Vested Date, staff shall review the SENTRY disciplinary log to determine if any GCT had been disallowed during the preceding anniversary period.  If no GCT was disallowed during the preceding anniversary period, then the GCT SENTRY data base shall be updated with the total amount of GCT possible to earn and a copy of the disciplinary log, as well as a copy of the GCT record (both signed and dated by the ISM staff member making the change and the auditor), shall be placed in the Judgment and Commitment File.

If some or all of the GCT had been disallowed during the preceding anniversary period and no BP-448 (Good Conduct Time Action Notice) has been received by the Vested Date that matches the disciplinary log record, then the disciplinary log shall be used as the official record for disallowing GCT on the Vested Date.  A copy of the disciplinary log shall be placed in the Judgment and Commitment File pending receipt of a BP-448 that matches the information on the disciplinary log.  After receipt of the BP-448 the disciplinary log copy shall be destroyed.  Again, an updated copy of the

SENTRY GCT record (signed and dated by the ISM staff member
making the change and the auditor) shall be placed in the
Judgment and Commitment File.

Once GCT has been credited, it vests and may not
later be disallowed.  If good cause exists (e.g., riot, food
strike, work stoppage, etc.) or the prisoner commits an act of
misconduct (See Program Statement on Inmate Discipline and
Special Housing Units) that occurred during the prior year but
does not become known until after the 15 day time limit has
expired, however, then the GCT may be disallowed even though the
time limit has been exceeded.  In addition, if an act of
misconduct is referred to the Discipline Hearing Officer (DHO)
and the DHO is unable to dispose of the referral in the manner
prescribed by the Program Statement on Inmate Discipline and
Special Housing Units within the 15 days allowed, then the
official award or disallowance of the GCT may be delayed for the
period of time necessary to comply with that Program Statement.

In any case not covered in the preceding paragraph
in which GCT is not disallowed within the proper time limit, the
RISA should be contacted for instructions.                    *

(3)  GCT that is disallowed and that is not
awarded from the maximum possible to award during the 15 day time
limit, may not be awarded at a later time.  If a disallowance of
GCT is successfully appealed, or if the BOP has for some reason
erroneously disallowed GCT, then the GCT may be credited at that
time.

(4)   The BOP has six weeks before the end of
the sentence to make a determination about how much of the
prorated GCT to award for the last portion of a year of the term
of imprisonment.   If the BOP makes no decision about the amount
of GCT to award in the last six weeks of the sentence, then the
entire amount possible to award for that period of time will be
automatically credited to the sentence on the last day of the
sentence (date of release and Vested Date).   Therefore, before
awarding any GCT on the Vested Date, staff shall review the
SENTRY disciplinary log to determine if any GCT had been
disallowed during the preceding anniversary period.   If no GCT
was disallowed during the preceding anniversary period, then the
GCT SENTRY data base shall be updated with the total amount of
GCT possible to earn and a copy of the disciplinary log, as well
as a copy of the GCT record (signed and dated by the ISM staff
member making the change and the auditor), shall be placed in the
Judgment and Commitment File.

If some or all of the GCT had been
disallowed during the preceding anniversary period and no BP-448
has been received by the Vested Date that matches the
disciplinary log record, then the disciplinary log shall be used
as the official record for disallowing GCT on the Vested Date.   A
copy of the disciplinary log shall be placed in the Judgment and
Commitment File pending receipt of a BP-448 that matches the
information on the disciplinary log.   After receipt of the BP-448
*   the disciplinary log copy shall be destroyed.   Again, an updated

copy of the SENTRY GCT record (signed and dated by the ISM staff member making the change and the auditor) shall be placed in the Judgment and Commitment File.                                                    *

(5) An action to delay, disallow or suspend the award of some or all of the GCT for a decision at a later time that is not within the 15 day, or six week, consideration time periods is not authorized.

For release purposes, subsection 3624(b) is the most important provision in the computation process since the proper application of that subsection determines the actual statutory date of release for the prisoner. The release date is determined, of course, by subtracting the total amount of GCT awarded during the term of the sentence from the full term date of the sentence. The total amount of GCT awarded during the term of a sentence is found by adding the amount of GCT awarded at the end of each year to the amount of GCT awarded for the last portion of a year.

As noted in (1) above, 54 days of GCT may be awarded for each full year served on a sentence in excess of one year. Since 54 days of GCT per year cannot be divided evenly into one year, or 12 months, or 52 weeks, or 365 days, determining the amount of GCT that may be awarded for the last portion of a year on the sentence becomes arithmetically complicated. The BOP has developed a formula (hereinafter called the "GCT formula") that

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 44A

best conforms to the statute when calculating the maximum number
of days that may be awarded for the time served during the last
portion of a year on the sentence.

The GCT formula is based on dividing 54 days (the maximum
number of days that can be awarded for one year in service of a
sentence) into one day which results in the portion of one day of
GCT (continued on next page)

P.S. 5880.28
February 21, 1992
Page 1 - 45

that may be awarded for one day served on a sentence.   365 days
divided into 54 days equals .148.   Since .148 is less than one
full day, no GCT can be awarded for one day served on the
sentence.   Two days of service on a sentence equals .296 (2 x
.148) or zero days GCT; three days equals .444 (3 x .148) or zero
days GCT; four days equals .592 (4 x .148) or zero days GCT; five
days equals .74 (5 x .148) or zero days GCT; six days equals .888
(6 x .148) or zero days GCT; and seven days equals 1.036 (7 x
.148) or 1 day GCT.   The fraction is always dropped.

Since, in accordance with the statute (18 USC § 3624(b)), no
GCT can be awarded to a sentence of one year or less, then the
very shortest sentence that can be awarded GCT is a sentence of 1
year and 1 day.   Because a prisoner would accrue GCT while
serving a sentence of 1 year and 1 day and, therefore, serve
something less than the full sentence, it would be impossible to
accrue the full 54 days of GCT for a sentence of 1 year and 1
day.   As a result, the GCT formula previously discussed must be
utilized as shown below to determine the amount of GCT to award
for a partial year.   This method of calculating the GCT possible
to award for the last portion of a year of a sentence to be
served must be followed in all partial year calculations.   (For
the purpose of this demonstration, the sentence of 1 year and 1
day equals 366 days.)

Step No. 1

Sentence  = 366 - 54 = 312 days

312 days served does not equal 54 days of GCT but does equal 46
days.

P.S. 5880.28
February 21, 1992
Page 1 - 46

Step No. 2

Days Served  = 312 x .148 = 46.176 = 46 days GCT


Subtracting 46 days from the sentence of 366 days results in 320
days to be served.


Step No. 3

Sentence  = 366 - 46  = 320 days

46 days of GCT is not enough because 46 plus 312 days to be
served equals a sentence of 358 days, 8 days short of a sentence
of 366 days (1 year and 1 day).


Step No. 4

Time Served  = 312 + 46  = 358 days

Comparing 320 days to serve, which is too much time to serve,
with 312 days to serve, which is not enough time to serve,
reveals that the amount of GCT that can be earned must fall
somewhere between 54 and 46 days. As a result, the next step is
to determine how much GCT can be earned on 320 days served.


Step No. 5

Time Served  ≈  320 x .148  = 47.36 = 47 days GCT

Subtracting 47 days from the sentence of 366 days (1 year and 1
day)
results in 319 days to be served.


Step No. 6

Sentence   =  366 - 47  = 319 days

Utilizing the GCT formula, it is learned that 319 days served
equals
47 days GCT.


Step No. 7

Time Served  = 319 x .148  = 47.212 = 47 days GCT

Adding 319 days time served to 47 days GCT does equal a sentence
of 366 days (1 year and 1 day).

P.S. 5880.28
February 21, 1992
Page 1 - 47

Step No. 8

Time Served  = 319 + 47  = 366 days

The amount of GCT that can be awarded for a sentence of 366 days
(1 year and 1 day) is 47 days.

    The steps that were followed in the preceding example must
be followed in every instance when it is necessary to determine
the amount of GCT that can be awarded for a partial year served
on a sentence.  A short version of the preceding eight steps is
shown below.

        366 x .148 = 54.168  (366 + 54 = 420)
        366 - 54= 312 x .148 = 46.176 (312 + 46 = 358)
        366 - 46= 320 x .148 = 47.36  (320 + 47 = 367)
        366 - 47= 319 x .148 = 47.212 (319 + 47 = 366)

Thus--319 days actually served plus 47 days of GCT equals 366
days, or a sentence of 1 year and 1 day.

    There is one exception to the "fraction is always dropped"
rule.  For instance, if the partial year remaining on a sentence
equals 7 days and if the full 7 days were served, then 1 day of
GCT credit (7 x .148 = 1.036 = 1 day) could be awarded.  If the 1
day is awarded, however, then only 6 days would actually be
served on the final 7 days and for 6 days served no GCT (6 x .148
= .888 = 0 days) would be authorized.  This arithmetical conflict
occurs each time that the actual time to serve plus the GCT
equals 1 day less than that final portion of the year remaining
on the sentence.  For example, applying the GCT formula to a
final portion of a year of 294 days results in the following
calculation.

```
294 x .148 = 43.512  (294 + 43 = 337)
294 - 43= 251 x .148 = 37.148 (251 + 37 = 288)
294 - 37= 257 x .148 = 38.036 (257 + 38 = 295)
294 - 38= 256 x .148 = 37.888 (256 + 37 = 293)
```

As you can see from above, the GCT formula does not produce a result that will allow the number of days actually served plus the GCT to equal 294 days.  Since it is to the advantage of the prisoner to award an additional full day for 37.888 days (38 days instead of 37 days) of GCT in such a situation, the BOP will award that additional 1 full day even though the time served results in a fraction (.888 in this case) short of a full day. (See Good Conduct Time Chart)

It is essential to learn that GCT is not awarded on the basis of the length of the sentence imposed, but rather on the number of days  actually served.  In other words, when the GCT awarded plus the number of days actually served equals the days remaining on the sentence, then the prisoner shall be released on the date arrived at in the computation process (days remaining on sentence - (GCT + days served) = release date).  The following example demonstrates the computation process for determining a final release date on a sentence with 355 days remaining and that has a 10-10-91 date of release prior to the award of GCT.

```
355 x .148 = 52.54  (355 + 52 = 407)
355 - 52= 303 x .148 = 44.844 (303 + 44 = 347)
355 - 44= 311 x .148 = 46.028 (311 + 46 = 357)
355 - 46= 309 x .148 = 45.172 (309 + 45 = 354)
355 - 45= 310 x .148 = 45.88  (310 + 45 = 355)


Release Date        = 10-10-91 =  19276
GCT                            = -00045
Final Release Date = 08-26-91 =  19231
```

P.S. 5880.28
February 21, 1992
Page 1 - 49

Based on the partial year formula, any sentence that equals 418 days (e.g., 1 year, 1 month and 21 days) through 425 days (e.g., 1 year, 1 month and 29 days), can receive 54 days of GCT. Beginning with sentences that equal 426 days, more than 54 days of GCT can be awarded.  As a result, any sentence that exceeds 425 days will require an Anniversary Date and a prorated year computation.

Now that the method for finding the release date for a partial year has been shown, the following example demonstrates the calculation of a sentence of 1 year and 1 month with no jail time credit or inoperative time.

```
Date Sentence Began           90-06-23
Sentence Length           = +01-01-00
Full Term Date                91-07-22* =  19196
Date Sentence Began           90-06-22* = -18801
Days Remaining                              395
```

```
395 x .148 = 58.46  (395 + 58 = 453)
395 - 58= 337 x .148 = 49.876 (337 + 49 = 386)
395 - 49= 346 x .148 = 51.208 (346 + 51 = 397)
395 - 51= 344 x .148 = 50.912 (344 + 50 = 394)
395 - 50= 345 x .148 = 51.06  (345 + 51 = 396)
```

You will note that the GCT formula does not allow the GCT plus the days served (344 + 50 = 394 and 345 + 51 = 396) to equal the days remaining on the sentence (395).  As a result, in accordance with the exception to always "dropping the fraction" rule, 51 days of GCT is awarded for the partial year rather than 50 days.

enter the number of days of Good Conduct Time into SENTRY on the Vested Date, or the last normal work day prior to the Vested Date.

e.    If a Good Conduct Time Action Notice (BP-448) has not been received by the Vested Date, then the Disciplinary Log shall be used as the official record for disallowing GCT on the Vested Date. A copy of the disciplinary log shall be placed in the J&C File pending receipt of a BP-448 that matches the information on the disciplinary log. After receipt of the BP-448, the disciplinary log copy shall be destroyed.

f.    For partial year awards, ISM staff will enter the final GCT award into SENTRY on the inmate's release date prior to the final satisfaction of the sentence. The final GCT award should be made on the inmate's release date, or the work day preceding the release date since awards of GCT are vested and may not later be disallowed. If the time remaining on the sentence is less than a year, a prorated amount of Good Conduct Time will be entered into SENTRY. This also includes shorter sentences up to and including a sentence of 417 days (usually equaling 1 year, 1 month and 1 day), which do not earn the full amount of 54 GCT days, but earn a lesser prorated amount. Inmates serving SRA sentences are not eligible for lump sum awards of GCT.

g.    Community Corrections staff will perform the above procedures for prisoners in community correction centers. The Disciplinary Log need not be produced for prisoners who are boarded out to state facilities or who are serving their sentences concurrently in a state facility.                           *

P.S. 5880.28
February 21, 1992
Page 4 - 5

GOOD CONDUCT TIME CHART

| Days Remaining On Final Portion Of Sentence | Maximum GCT Available | Days Actually Served | Days Remaining On Final Portion Of Sentence | Maximum GCT Available | Days Actually Served |
|---|---|---|---|---|---|
| 337 Days | 43 GCT | 294 Days | 379 Days | 48 GCT | 331 Days |
| 338 Days | 43 GCT | 295 Days | 380 Days | 49 GCT | 331 Days |
| 339 Days | 43 GCT | 296 Days | 381 Days | 49 GCT | 332 Days |
| 340 Days | 43 GCT | 297 Days | 382 Days | 49 GCT | 333 Days |
| 341 Days | 44 GCT | 297 Days | 283 Days | 49 GCT | 334 Days |
| 342 Days | 44 GCT | 298 Days | 384 Days | 49 GCT | 335 Days |
| 343 Days | 44 GCT | 299 Days | 385 Days | 49 GCT | 336 Days |
| 344 Days | 44 GCT | 300 Days | 386 Days | 49 GCT | 337 Days |
| 345 Days | 44 GCT | 301 Days | 387 Days | 50 GCT | 337 Days |
| 346 Days | 44 GCT | 302 Days | 388 Days | 50 GCT | 338 Days |
| 347 Days | 44 GCT | 303 Days | 389 Days | 50 GCT | 339 Days |
| 348 Days | 44 GCT | 304 Days | 390 Days | 50 GCT | 340 Days |
| 349 Days | 45 GCT | 304 Days | 391 Days | 50 GCT | 341 Days |
| 350 Days | 45 GCT | 305 Days | 392 Days | 50 GCT | 342 Days |
| 351 Days | 45 GCT | 306 Days | 393 Days | 50 GCT | 343 Days |
| 352 Days | 45 GCT | 307 Days | 394 Days | 50 GCT | 344 Days |
| 353 Days | 45 GCT | 308 Days | 395 Days | 51 GCT | 344 Days |
| 354 Days | 45 GCT | 309 Days | 396 Days | 51 GCT | 345 Days |
| 355 Days | 45 GCT | 310 Days | 397 Days | 51 GCT | 346 Days |
| 356 Days | 46 GCT | 310 Days | 398 Days | 51 GCT | 347 Days |
| 357 Days | 46 GCT | 311 Days | 399 Days | 51 GCT | 348 Days |
| 358 Days | 46 GCT | 312 Days | 400 Days | 51 GCT | 349 Days |
| 359 Days | 46 GCT | 313 Days | 401 Days | 51 GCT | 350 Days |
| 360 Days | 46 GCT | 314 Days | 402 Days | 51 GCT | 351 Days |
| 361 Days | 46 GCT | 315 Days | 403 Days | 52 GCT | 351 Days |
| 362 Days | 46 GCT | 316 Days | 404 Days | 52 GCT | 352 Days |
| 363 Days | 46 GCT | 317 Days | 405 Days | 52 GCT | 353 Days |
| 364 Days | 47 GCT | 317 Days | 406 Days | 52 GCT | 354 Days |
| 365 Days | 47 GCT | 318 Days | 407 Days | 52 GCT | 355 Days |
| 366 Days | 47 GCT | 319 Days | 408 Days | 52 GCT | 356 Days |
| 367 Days | 47 GCT | 320 Days | 409 Days | 52 GCT | 357 Days |
| 368 Days | 47 GCT | 321 Days | 410 Days | 52 GCT | 358 Days |
| 369 Days | 47 GCT | 322 Days | 411 Days | 53 GCT | 358 Days |
| 370 Days | 47 GCT | 323 Days | 412 Days | 53 GCT | 359 Days |
| 371 Days | 47 GCT | 324 Days | 413 Days | 53 GCT | 360 Days |
| 372 Days | 48 GCT | 324 Days | 414 Days | 53 GCT | 361 Days |
| 373 Days | 48 GCT | 325 Days | 415 Days | 53 GCT | 362 Days |
| 374 Days | 48 GCT | 326 Days | 416 Days | 53 GCT | 363 Days |
| 375 Days | 48 GCT | 327 Days | 417 Days | 53 GCT | 364 Days |
| 376 Days | 48 GCT | 328 Days | 418 Days | 54 GCT | 364 Days |
| 377 Days | 48 GCT | 329 Days | 419 Days | 54 GCT | 365 Days |
| 378 Days | 48 GCT | 330 Days | 420 Days | 54 GCT | 366 Days |

# EXHIBIT 1k

REGISTER NO: 03421-068 NAME..: TAYLOR, KEVIN
FUNCTION...: DIS       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 03-03-2005
                       RSP OF: DEV-DEVENS FMC

------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 101875 - SANCTIONED  INCIDENT DATE/TIME: 09-02-1992 1555
DHO HEARING DATE/TIME: 09-15-1992 1015
FACL/CHAIRPERSON.....: LEW/EMORY, D.
APPEAL CASE NUMBER(S): 36678
REPORT REMARKS.......: GUILTY OF CODES 312/307
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        DS        / 15 DAYS / CS
        COMP:   LAW:
        LOSE PRIV  / 3 MONTHS / CS / SUSPENDED 180 DAYS
        COMP:   LAW:    LOSS OF COMMISSARY FOR 3 MONTHS - SUSPENDED PENDIN
                        180 DAYS CLEAR CONDUCT
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        DS        / 15 DAYS / CS
        COMP:   LAW:

G0002     MORE PAGES TO FOLLOW . . .

REGISTER NO: 03421-068 NAME..: TAYLOR, KEVIN
FUNCTION...: DIS      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 03-03-2005
                      RSP OF: DEV-DEVENS FMC

------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 85046 - SANCTIONED    INCIDENT DATE/TIME: 05-27-1992 1645
DHO HEARING DATE/TIME: 06-18-1992 0900
FACL/CHAIRPERSON.....: LEW/ZIMANY R
APPEAL CASE NUMBER(S): 32549
REPORT REMARKS.......: INMATE FOUND GUILTY AS CHARGED
   206  MAKING SEXUAL PROPOSAL/THREAT - FREQ: 1 ATI: ???
         DIS GCT    / 20 DAYS / CS
         COMP:    LAW:
         DS       / 30 DAYS / CS / SUSPENDED 180 DAYS
         COMP:    LAW:   SUSPENDED PENDING 180 DAYS CLEAR CONDUCT


G0002       MORE PAGES TO FOLLOW . . .

REGISTER NO: 03421-068 NAME..: TAYLOR, KEVIN
FUNCTION...: DIS    FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 03-03-2005
                    RSP OF: DEV-DEVENS FMC

------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 56526 - SANCTIONED    INCIDENT DATE/TIME: 11-30-1991 1605
UDC HEARING DATE/TIME: 12-02-1991 0950
FACL/UDC/CHAIRPERSON.: RBK/NIA/SCOTT GL
APPEAL CASE NUMBER(S): 23469
REPORT REMARKS.......: INMATE FOUND GUILTY AS CHARGED.
   321  INTERFERING WITH TAKING COUNT - FREQ: 1
        RESTR QTRS / 7 DAYS / CC
        COMP:    LAW:


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# EXHIBIT 11

U.S. DEPARTMENT OF JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _____

     LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT        INSTITUTION

**Part A- INMATE REQUEST** Administrative Remedy because my Unit Team Counselor had violated Program Statement on Fine where he declared me FRP refusal though there is no "direction from the Court concerning when an obligation should be collected." See PS 5380-07, 1/3/00, Pg. 8, paragraph 5; also see "Judgment & Commitment" order which does not indicate by the "COURT" that my fine should be paid immediately. Because the program statement requires the COURT to give such direction concerning an obligation to pay while incarcerate and since such policy does not mention the government (financial litigation attorney) as being able to give direction to Unit staff to collect payment for a fine then the counselor reliance on the government, instead of the COURT to determine whether XXXXX my fine is to be collected immediately was in violation of BOP policy. I should be exempted from FRP until Unit staff contact the court for clarification. Thus, administrative remedy should be granted.

_4/3-04_ _____                    _____

        DATE                                      SIGNATURE OF REQUESTER

**Part B- RESPONSE**



RECEIVED

APR 1 9 2004

FMC DEVENS
WARDEN'S OFFICE

_____                                    _____

        DATE                                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

                                                CASE NUMBER: _____

**FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE** _____

                                                  CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                                    _____

        DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                                                   BP-229(13)
                                                                   APRIL 1982

USP LVN

FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS
RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #331704-F1

This is in response to your Request for Administrative Remedy in which you allege your Counselor violated the policy on the Inmate Financial Responsibility Program (FRP) by keeping you in FRP Refuse status.

An investigation revealed you have been on FRP refuse status continuously since June 1, 2001. In addition, your file contains correspondence directed to you from the United States Attorney's Office, Western District of Pennsylvania, Financial Litigation Unit, dated October 16, 2002. In this correspondence, you are informed of your liability to pay your court ordered fine of $10,000.00 during incarceration and extending 20 years after your release. Furthermore, you were informed an additional 15 percent penalty was assessed due to your failure to make appropriate payments. A review of your inmate account data reveals you have received $876.25 in deposits during the past six months. Furthermore, you have a current account balance of $930.15. Since you have failed to make a payment toward your court ordered obligations, and you possess financial resources to make a payment, your Counselor has taken appropriate action. If you agree to make a payment commensurate with an appropriate financial plan, and make such payment, you will be placed in FRP Participates status accordingly.

Based upon the above facts, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at the: Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania 19106. Your appeal must be received in the Northeast Regional Office within 20 days from the date of this response.

_____                    5/3/4
David L. Winn, Warden                              Date

# EXHIBIT 1m

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: Taylor, Kevin              03421-068          N-2        FMC-Ft Devens

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** — The Regional Administrative Remedy appeal is respectfully submitted to appeal the Warden's erroneous findings of the facts and clear misinterpretation of Program Statement 5380.07, paragraph 5, page 8. First, the Warden erroneously relied upon the United States Attorney's Office Financial Litigation Unit ("U.S. Att. Off. Financial Litgtn Unit") and a previous Federal Institution statements that the fine should be paid immediately while incarcerated. However, neither agencies (U.S. Att. Off. Financial Litigation Unit or previous institution staffs') determinations to paid the fine complies with policy that explicitly states and requires only the "Court" — that mean the "JUDGE" must give the direction concerning the obligation to pay the fine while incarcerated. See PS 5380-07, paragraph 5, 1-3-00, pg. 8 Second, since the facts (Judgment & Commitment Order) show that the "Court" did not indicate immediate payment the fine does not have to be paid during incarceration. See Judgment & Commitment Order; see also Memorandums (U.S.P. Lom Poc, Lewisburg, and FCIs McKean, Cumberland and Allenwood who contact the court but the judge was declined to amend the J & C order to indicate immediate payments. Therefore, my exempt status should be reinstated and the fine will be paid on supervised release.

5-7-04                                                    Kevin Taylor
DATE                                                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE                                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

USP LVN          DATE          Previous editions not usable          SIGNATURE, RECIPIENT OF REGIONAL APPEAL          BP-230(13)
                                                                                    APRIL 1982

**TAYLOR, Kevin**
Reg. No. 03421-068
Appeal No. 331704-R1
Page One

---

### Part B - Response

In your appeal, you claim the Warden at FMC Devens misinterpreted
Program Statement 5380.07, <u>Inmate Financial Responsibility
Program,</u> when he relied upon the United States Attorney's Office
Financial Litigation Unit and a previous institution's statement
that your fine must be paid during your confinement.  You state
the Bureau of Prisons and the Financial Litigation Unit lack the
authority to collect financial obligations imposed by the court.
As relief, you request to be removed from FRP Refusal status and
returned back to FRP Exempt status.

Program Statement 5380.07, <u>Inmate Financial Responsibility
Program</u>, states the inmate's effort toward fulfilling those
obligations imposed by the Court are indicative of the inmate's
acceptance and demonstrated level of responsibility.  The Bureau
has established procedures to encourage inmates to contribute
toward court-ordered financial obligations while incarcerated.
Although the participation by the inmate is voluntary,
encouraging payment of court-ordered financial obligations is
consistent with promoting responsibility in inmates.  Those
inmates who choose not to participate in the program demonstrate
poor responsibility and are held accountable for their inactions.

You were ordered by the court to pay a $10,000.00 fine
immediately.  As conveyed to you by the Warden, your file
contained correspondence from the United States Attorney's
Office, Western District of Pennsylvania, Financial Litigation
Unit, dated October 16, 2002, which indicated you owed the fine
during your period of confinement.  You expressed to staff that
you had no intention of paying the fine.  As such, you were
appropriately placed in FRP Refuse status.  Accordingly, your
appeal is denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date: June 7, 2004

D. SCOTT DODRILL
Regional Director

# EXHIBIT 1n

~~FEDERAL BUREAU OF PRISONS~~

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: Taylor, Kevin        #03421-058        J-B        FMC-Devens

|  LAST NAME, FIRST, MIDDLE INITIAL  |  REG. NO.  |  UNIT  |  INSTITUTION  |

**Part A—REASON FOR APPEAL**          This B.P.–11 is being filed to appeal the Regional Director's denial od Administrative Remedy.

    The Regional Director erroneously found that the United States Attorney's Office, financail litigation unit letter of October 16, 2002 was sufficient order to indicate that this inmate must pay the fine immediately, whci further violates P.S. 5380.07, paragraph 5, page 8. First, there is no documented information in the Judgment and Commitment order to indicate immediate payment of fine as required by the policy, nor is the governemnt financial litigation unit a court to order the ~~inx~~ immediate payment of such fine as required by policy. Further, the inmate still rely on the same contentions alleged in the B.P.–08, B.P.–9 and B.P.–10 for administrative remedy.

6-14-04

| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

|          | 'JUN 2 2004 |  GENERAL COUNSEL  |
| DATE     | AUG – 9 2004 |  |
| FIRST COPY: WASHINGTON FILE COPY |  | CASE NUMBER 331704 A3 |

**Part C—RECEIPT**              JUL 4 2004   CASE NUMBER

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL | BP-231(13)
APRIL 1982 |

USP LVN

**Administrative Remedy No. 331704-A3**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal in which you contend the Bureau of Prisons has no authority to collect your court ordered financial obligations. You request to be removed from IFRP Refuse status and placed in IFRP Exempt status.

Our review reveals the Warden and Regional Director adequately responded to the issues raised in your appeal. Program Statement 5380.07, <u>Financial Responsibility Program, Inmate</u>, establishes a voluntary program through which inmates work with staff to develop a plan to meet their financial obligations, including court ordered assessments, costs, and restitution. One of the primary goals of the IFRP is to further rehabilitation through encouraging financial responsibility. The IFRP was developed in response to laws which require all law enforcement agencies to make a diligent effort to collect court ordered financial obligations. The IFRP is a voluntary program, however, if an inmate chooses not to participate, he will be placed in IFRP REFUSE status and incur consequences. The consequences consist of the removal of privileges which are not guaranteed to the inmate by the U.S. Constitution (i.e., no outside work details, lowest housing status, no pay increases, etc.).

Records indicate were ordered by the sentencing Court to pay a $10,000.00 fine. Records further indicate the United States Attorney's Office, Western District of Pennsylvania, has confirmed payment on your fine is due immediately. Under the IFRP, the Bureau is providing you with an opportunity to demonstrate financial responsibility by addressing your financial obligations as ordered by the court. P.S. 5380.07 indicates staff will assist an inmate in determining an appropriate payment plan by assessing the total amount of money in an inmate's trust fund account, excluding the telephone credits after subtracting the inmate's IFRP minimum payment schedule, but including money received from outside sources. You have refused to make payments on this financial obligation and, therefore, have been placed in IFRP Refuse status.

We find the actions of staff appropriate and in accordance with policy. Your appeal is denied.

_September 30, 2004_
Date

Harrell Watts, Administrator
National Inmate Appeals

# EXHIBIT 1o

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

**Part A– INMATE REQUEST** – for administrative remedy to resolve the miscomputation of his sentence and statutory release date. See both inmate request and the B.P. 58. The computation of this inmate's sentence and release date is incorrect according to Program Statement 5100.07. See attached B.P. 58

According Program Statement 5100.07, chapter 6, a 240 month sentence under the sentencing reform act of 1984 calculate to 204 months, that is, 17 years, which the inmate's release date should be 1-8-06 instead of 1-25-0_ since 85% of 240 month is 204. See attached B.P. 58

Therefore, administrative remedy should granted to correct the error in the calculation of this inmate's sentence and release date.

_____    _____
          DATE                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
MAY 1 4 2004

_____    _____
          DATE                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

_____    _____
          DATE                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP–229(13)
APRIL 1982

USP LVN

**FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS**
**RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #335328-F1**

This is in response to your Request for Administrative Remedy in which you request your
sentence computation be re-computed due to an incorrect release date according to your review
of Program Statement 5100.07 Security Designation and Custody Classification Manual.

Investigation of your request reveals the following:  Your sentence computation was computed
correctly pursuant to Program Statement 5880.28 Sentence Computation Manual.  Sentence
computations are not computed using any other Program Statement other than Program
Statement 5880.28 Sentence Computation Manual.  Your sentence computation correctly reflects
the date your sentence began as June 28, 1989, your term in effect as twenty years, your prior
custody credit as 174 days, and your projected good conduct time as 923 days to give you a
projected release date of June 26, 2006.

Based on the information above, your request is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of
Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets,
Philadelphia, Pennsylvania, 19106.  Your appeal must be received in the Northeast Regional
Office with 20 days of the date of this response.

_____
David L. Winn, Warden

_6/2/4_____
Date

# EXHIBIT 1p

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: _Taylor, Kevin_ _____ _03021-468_ _____ _Unit_ _____ _USP Lewis_ _____
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**    This Regional Administrative Remedy Appeal is being filed to appeal the Warden's erroneous findings and denial of the B.P.-09.

First, the warden erred in finding that my sentence correctly reflect the good time credit of 923 days for a sentence of twenty years. The Warden further erred in finding that my release date is June 25, 2009.

According to Program Statement 5100.07, chapter 6, page 5, BOP is required to compute my 240 months sentence into 85%, by determining 85% of 240 months. That, 85% of 240 months comes to 204 months, which is also 17 years. Then computing my jail time credit of 174 days with the 204 months then the remainder of my sentence is 198 months and 6 days (i.e., 198.6) Therefore, my projected release date should be 1-3-06, since 198.6 months commenced on 6-28-89. also see the B.P.-09; B.P.-09, and the Inmate Request (Cop-out)

Second, my good-time credit should reflect 1020 days instead of 923 days, since 51 multiplied by 20 equals 1020, which also equals 36 months. Subtract 36 months from 240 months equals 204 months.

_6-8-04_ _____        _Kevin Taylor_ _____
    DATE                                 SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____          _____
          DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE         CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

USP LVN    DATE     Previous editions not usable        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

                                                             BP-230(13)
                                                             APRIL 1982

**TAYLOR, Kevin**
Reg. No. 03421-068
Appeal No. 335328-R1
Page One

---

### Part B - Response

You appeal the decision of the Warden at FMC Devens to deny your
request to recalculate your sentence.  You state you are not
receiving the correct amount of good conduct time (GCT).   You
contend the GCT should be computed by using the sentence imposed,
not the time served.

A review of our records reveals you are serving a sentence of 20
years imposed on June 28, 1989, for offenses you committed on
January 5, 1989.   The version of § 3624(b) authorizing the Bureau
to award GCT in your case provided the following. "A prisoner who
is serving a term of imprisonment of more than one year, other
than [life], shall receive credit toward the service of his
sentence, beyond the time served, of fifty-four days at the end
of each year of his term of imprisonment, beginning at the end of
the first year of the term, unless the Bureau of Prisons
determines that, during that year, he has not satisfactorily
complied with ... institutional regulations....  Credit for the
last year or portion of a year of the term of imprisonment shall
be prorated...."  The interpretation of § 3624(b) by the Bureau
in Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>,
Pages 1-40 and 1-41 mirrors the statute: and states: "54 days of
GCT may be earned for each full year served on a sentence in
excess of one year, with the GCT being prorated for the last
partial year."  The statute requires credit after the actual
service of a year.  The Bureau reasonably interpreted this part
of the statute to require properly awarded 54 days GCT be
subtracted from the remainder of the sentence, not from the year
already served.  If the Bureau computed GCT in the manner you
request as relief, then the Bureau would violate the statutory
mandate that the GCT be awarded at the end of each year of
imprisonment.  The institution correctly determined your
eligibility for GCT.  Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date:   July 12, 2004            D. SCOTT DODRILL
                                 Regional Director

# EXHIBIT 1q

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: _____
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**    The Central Office Administrative Remedy officer is being failed to uphold the erroneous ruling of the Regional Director, and the denial of the B.P. #10.

The calculation of my good-time is correct which I should recieve 1080 for a term of twenty years. The calculation of good time by the BOP is conflicting with the United States Congress' intent that I served 85% of my sentence which is 17 years. See attached B.P. 9, 10.

Because the BOP is making me served more than 85% of my sentence than the BOP had incorrectly calculated my good time. See attached B.P. 9 and 10.

Administrative remedy should be granted which my projected release date should be January 3, 2006. See attached B.P. 9 and 10

_July 26 2004_
     DATE

_____
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
     DATE

_____
GENERAL COUNSEL

**THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE**

CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
     DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN

Administrative Remedy No. 335328-A1
Part B - Response

You contend the Bureau of Prisons has incorrectly calculated the
amount of Good Conduct Time you may earn during your term of
imprisonment.

You are serving a sentence of 20 years imposed on June 28, 1989,
for an offense committed on January 5, 1989.  The version of
§ 3624(b) authorizing the Bureau to award GCT in your case
provided the following.  "A prisoner who is serving a term of
imprisonment of more than one year, other than [life], shall
receive credit toward the service of his sentence, beyond the
time served, of fifty-four days at the end of each year of his
term of imprisonment, beginning at the end of the first year of
the term, unless the Bureau of Prisons determines that, during
that year, he has not satisfactorily complied with . . .
institutional regulations . . . Credit for the last year or
portion of a year of the term of imprisonment shall be prorated .
. ."  The interpretation of § 3624(b) by the Bureau is contained
in 28 CFR § 523.20, which provides that "an inmate earns 54 days
credit toward service of sentence (good conduct time credit) for
each year served.  This amount is prorated when the time served
by the inmate for the sentence during the year is less than a
full year."  The method of calculation is set forth in Program
Statement 5880.28, Sentence Computation Manual CCCA, pgs. 1-40
and 1-41: "54 days of GCT may be earned for each full year served
on a sentence in excess of one year, with the GCT being prorated
for the last partial year."  BOP interprets the statute to
require deduction of the time served (one year) and good conduct
time earned (up to 54 days) off your sentence at the end of the
actual service of each year.  As each year of actual service
ends, another deduction is made for the time served and good
conduct time earned for the year.  Good conduct time is awarded
proportionally based on actual time served in the last partial
year.  The Bureau has reasonably interpreted this statute to
require properly awarded good conduct time to be subtracted from
the remainder of the sentence, not from the year already served.
If the Bureau computed GCT in the manner you request as relief,
then it would violate the statutory mandate that the GCT be
awarded at the end of each year of the prisoner's term of
imprisonment.  The institution properly computed your sentence
and correctly applied BOP's method for awarding good conduct
time.

Your appeal is denied.


_____  August 26, 2004        _____for Delia A. Rios_____
        Date                            Harrell Watts, Administrator
                                        National Inmate Appeals

# EXHIBIT 1r



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD
**NUMBER:** 5380.07
**DATE:** 1/3/2000
**SUBJECT:** Financial Responsibility
Program, Inmate

**RULES EFFECTIVE:** 1/27/2000

1.  **[PURPOSE AND SCOPE §545.10.  The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations.  As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility.  The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation.]**

The Victim and Witness Protection Act of 1982, the Victims of Crime Act of 1984, the Comprehensive Crime Control Act of 1984, and the Federal Debt Collection Procedures Act of 1990 require a diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations.

2.  **SUMMARY OF CHANGES.**  Significant changes in this revision include:

●  Unit Team discretion in postponing a newly committed Federal inmate's participation in the Inmate Financial Responsibility Program (IFRP) until the first program review.

●  Outlines expiration dates for financial obligations.

●  A commissary spending limitation for IFRP "REFUSE" status inmates of at least $25 per month, excluding purchases of stamps, telephone credits, and, if applicable, Kosher/Halal certified shelf-stable entrees.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

● Instructs staff on identifying excess monies in the inmate's account and to encourage inmates to apply these monies toward financial obligations.

● Expanded definition of "EXEMPT TMP" status.

3. **PROGRAM OBJECTIVES.** The expected results of this program are:

a. All sentenced inmates with financial obligations will develop, with the assistance of staff, a financial plan to meet those obligations.

b. Each financial plan will be monitored effectively to ensure satisfactory progress is being made.

c. Appropriate consequences will be incurred for inmates who refuse to participate in the Inmate Financial Responsibility Program or fail to comply with provisions of their financial plan.

4. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

PS 5380.05    Financial Responsibility Program, Inmate (12/22/95)

b. **Directives Referenced**

| | |
|---|---|
| PS 2000.02 | Accounting Management Manual (10/15/86) |
| PS 4500.04 | Trust Fund Management (12/15/95) |
| PS 5180.04 | Central Inmate Monitoring System (8/16/96) |
| PS 5251.05 | Work and Performance Pay Program, Inmate (12/31/98) |
| PS 5264.06 | Telephone Regulations for Inmates (12/22/96) |
| PS 5280.08 | Furloughs (2/4/98) |
| PS 5290.11 | Admission and Orientation Program (3/5/98) |
| PS 5321.06 | Unit Management (7/31/96) |
| PS 5322.11 | Classification and Program Review of Inmates (3/11/99) |
| PS 5330.10 | Drug Abuse Programs Manual, Inmate (5/25/95) |
| PS 5380.03 | Cost of Incarceration Fee (6/2/95) |
| PS 5800.11 | Central File, Privacy Folder and Parole Mini-Files (9/8/97) |
| PS 5803.07 | Progress Reports (3/16/98) |
| PS 5873.05 | Release Gratuities, Transportation, and Clothing (9/4/96) |
| PS 5882.03 | Fines and Costs (5/28/98) |

PS 7310.04      Community Corrections Center (CCC)
                Utilization and Transfer Procedure (12/16/98)
PS 8120.01      FPI Work Programs for Inmates (3/27/95)

c.  Rules cited in this Program Statement are contained in
28 CFR 545.10-11.

## 5. **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  None

b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  None

c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  None

d.  American Correctional Association Standards for Adult
Correctional Boot Camp Program:  None.

## 6. **PRETRIAL, HOLDOVER AND/OR DETAINEE PROCEDURES.**  Procedures
specified in this Program Statement do not apply to pretrial or
detainee inmates.  Bureau holdover inmates housed in Bureau jail
facilities who are in IFRP "REFUSE" status will be held to the
same FRP restrictions (e.g. lowest housing, no special purchases,
not eligible for community-based programs, etc.), as if they were
at the institution designated for them.

## 7. **INMATE FINANCIAL RESPONSIBILITY PROGRAM (IFRP) COORDINATORS.**
The Administrator, Correctional Programs Branch, Central Office,
is to appoint a National IFRP Coordinator to act as a resource
person for Bureau staff, other components of the Department of
Justice, other law enforcement agencies, and the public.

Each Regional Correctional Programs Administrator is to appoint a
Regional IFRP Coordinator to:

- act as a resource person,
- monitor institution programs, and
- provide quality control within that region.

Each Warden will appoint an Institution IFRP Coordinator to
monitor all applicable IFRP assignments for inmates in the
institution and ensure that IFRP information is provided to
inmates during the Admission and Orientation Program.

8.   **[PROCEDURES §545.11.   When an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation.]**

Unit staff are responsible for entering data into the IFRP SENTRY module accurately using the IFRP SENTRY Technical Reference Manual.  After an inmate signs a contract agreement, unit staff are to forward the original signed copy to the institution Office of Financial Management (OFM).

Staff are to encourage inmates to satisfy their obligations at the time of commitment or subsequently to earn compensation through UNICOR or other institution work assignments.  The Unit Team may postpone a newly committed inmate's participation in the IFRP until his or her first program review, if staff determine the inmate has limited financial resources.  This option may apply to inmates with lengthy sentences (e.g. five years or longer) and to inmates with limited financial resources.

   **[a.   Developing a Financial Plan.   At initial classification, the unit team shall review an inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s).   The financial plan developed shall be documented and will include the following obligations, ordinarily to be paid in the priority order as listed:**

   **(1)   Special Assessments imposed under 18 U.S.C. 3013;]**

     A defendant's obligation to pay a special assessment ceases five years after the date judgment was imposed.  Inmates who fail to pay their assessments during the five-year period become absolved of this responsibility.  18 U.S.C. § 3013(c)

   **[(2) Court-ordered restitution;]**

     When the court imposes restitution in **conjunction** with a special assessment, the inmate and unit team may develop a financial plan for satisfying the restitution **prior** to the special assessment, provided:

        (a)   Significant bodily injury to a victim occurred as a result of the offense; and/or

        (b)   Significant loss or destruction of property to a victim occurred as a result of the offense; and/or,

(c)  The court, U.S. Attorney's Office, or other law enforcement agency in the jurisdiction where the offense occurred has requested it.

If the Judgment in a Criminal Case states that restitution is to be made directly to the victim, the payment(s) is still processed through the SENTRY IFRP module, and Financial Litigation staff will distribute the funds.

A defendant's obligation to pay restitution ceases 20 years after the inmate's release from incarceration for inmates convicted **on or after** April 24, 1996.

A defendant's obligation to pay restitution ceases on a circuit-by-circuit basis for inmates convicted **prior to** April 24, 1996.  18 U.S.C. § 3613(b)

### [(3)  Fines and court costs;]

The court may establish a payment schedule or a deferred payment date to satisfy an order of restitution or a fine.  When the dates of the court-ordered payment schedule follow the period of incarceration, the financial plan should address any other financial obligations, while encouraging a savings plan to help meet future obligations.

A defendant's obligation to pay a fine ceases 20 years after the date judgment was imposed for inmates convicted **prior to** April 24, 1996.

A defendant's obligation to pay a fine ceases 20 years after the inmate's release from incarceration for inmates convicted **on or after** April 24, 1996.  18 U.S.C. § 3613(b)

### [(4)  State or local court obligations; and]

These may include child support, alimony, etc.  Unit staff must obtain the court order or judgment that demonstrates the inmate's obligation.  This document may be obtained from the U.S. Probation Officer or directly from the court issuing the order. A letter from the Court is not sufficient.

### [(5)  Other federal government obligations.]

Fees imposed under the provisions of Cost of Incarceration 18 U.S.C. § 4001, note, will be paid before other financial obligations included in this category.  Other obligations included in this category are judgments in favor of the United

States, as well as such obligations as student loans, Veterans Administration claims, tax liabilities, Freedom of Information/ Privacy Act fees, etc.

In accordance with 18 U.S.C. § 3624(e), any inmate who has a term of supervised release and a fine relative to the offense under which he or she was committed, must agree to adhere to an installment schedule to pay any remaining balance on this fine while under release supervision. Any inmate who refuses to comply with 18 U.S.C. § 3624(e) must remain in Bureau custody.

The inmate must sign and unit staff are to witness the Agreement to Adhere to Installment Schedule Agreement for Unpaid Fines (Attachment A) no later than 60 days prior to the inmate's release from custody. The signed agreement is to be placed in the Inmate Central File (Section 1) and copies forwarded to the Inmate Systems Manager and the Supervising U.S. Probation Officer.

A consecutive sentence in which there is a court-imposed financial obligation **does not** relieve an inmate of satisfying that debt(s) prior to actually serving that sentence. He or she is to be placed in the appropriate IFRP status depending upon the unit team's assessment of the inmate's ability to pay based upon community resources and institution earnings. When an inmate is assessed interest on an obligation, staff will not enter the interest as an obligation until the principal has been paid.

Absent direction from the court concerning when an obligation should be collected, payments may begin during an inmate's period of incarceration. However, unit staff are to contact the U.S. Probation Office for clarification when it is unclear if the court-ordered obligation is to be paid while the inmate is in Bureau custody or as a condition of supervision.

[b. **Payment**. **The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff. Payments may be made from institution resources or non-institution (community) resources. In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments, set forth below in paragraphs (b)(1) and (b)(2) of this section. The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).]**

At each program review, when reviewing the inmate's financial plan, the unit team must:

- determine the total funds deposited into the inmate's trust fund account for the previous six months;
- subtract the IFRP payments made by the inmate during the previous six months; and
- subtract $450 (i.e., $75 x 6 months, ITS exclusion).

Any money remaining after the above computation may be considered for IFRP payments, regardless of whether the money is in the inmate's trust fund or phone credit account. All monies above that computation, may be used to adjust the inmate's IFRP payment plan.

> **Note:** Once money has been transferred from the inmate's trust fund account to the inmate's phone credit account, this money may not be transferred back to the inmate's trust fund account, except as provided for in the Trust Fund/Warehouse/Laundry Manual. If an inmate's IFRP contract is adjusted due to a significant amount of incoming funds (above the $450 exclusion) being deposited in the phone credit account, the inmate is to be encouraged to refrain from additional deposits to the phone credit account to accommodate the new IFRP payments.

**[(1)  Ordinarily, the minimum payment for non-UNICOR and UNICOR grade 5 inmates will be $25.00 per quarter.  This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources.**

**(2)  Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay to the payment process.  Any allotment which is less than the 50% minimum must be approved by the Unit Manager. Allotments may also exceed the 50% minimum after considering the individual's specific obligations and resources.]**

"Monthly pay" includes bonus and vacation pay.  A recommendation for a lump sum award is to be forwarded from the detail supervisor to the unit team to note the inmate's IFRP status prior to forwarding to the Warden.

IFRP contracts for UNICOR inmates assigned grades 1 through 4 who earn less than $50 per month should be set up for single or quarterly trust fund withdrawals (the unit team is to determine the frequency of payments; however, payments should not be

monthly unless they are outside payments), until the inmate earns at least $50 monthly in a UNICOR position. The payment should be for no less than $25. When the inmate earns $50 or more per month, the IFRP contract should be changed to stipulate 50% of the inmate's pay. Likewise, when payments exceed the 50% minimum for UNICOR inmates, an additional trust fund withdrawal or outside payment should be stipulated on the IFRP contract, since the IFRP module will only allow 50% deductions.

   (3)  Payments may be made in the following manner:

      (a)  **Non-Institutional Payments.** An inmate may use non-institutional (community) resources to satisfy a financial obligation. Ordinarily, these are "one-time" payments directly to the parties to whom the obligations are owed and are intended to satisfy obligations of significant amounts. It is the inmate's responsibility to ensure staff are provided with a receipt to confirm a payment from a community resource. Canceled checks are not sufficient.

      Furthermore, unless exceptional circumstances warrant otherwise, the receipt for payment must be confirmed by the appropriate law enforcement agency (U.S. Attorney's Office, U.S. Probation Office, Clerk of Court, etc).

      (b)  **Single Payment.** When an inmate's total financial obligation is $100 or less (for example, a Special Assessment) a single payment is preferred.

      (c)  **Monthly/Quarterly Repetitive Withdrawals.** Repetitive withdrawals from the inmate's Trust Fund Account will be used for **all** inmates who elect to make financial payments from institution earnings. By using the SENTRY program, unit staff **must** indicate if the repetitive payment is to be made monthly or quarterly. Quarterly repetitive payments should be requested only from non-UNICOR and UNICOR Grade 5 inmates. Repetitive withdrawals for UNICOR inmates Grades 1-4 are discussed below.

      The OFM shall process quarterly repetitive payments **once** each quarter during the last month of each quarter (December, March, June and September). Any contract indicating quarterly repetitive payments OFM received during the first or second month of the quarter are to be held and processed during the last month of the quarter.

   **[c.  Monitoring.  Participation and/or progress in the Inmate Financial Responsibility Program will be reviewed each time staff assess an inmate's demonstrated level of responsible behavior.]**

At these reviews, the status of the payment plan and the inmate's degree of participation is to be reflected on the Program Review Report. Unit staff will indicate the total amount deposited into the inmate's trust fund account for the previous six months in the "FRP Plan/Progress" section of the Program Review Report form.

If an inmate is not making payments commensurate with these deposits, unit staff must also document the specific reasons. Unit staff may make positive comments regarding the inmate's FRP participation. Reports on the status of the inmate's participation are also to be reflected on his or her progress report.

When a progress report is prepared for release purposes, a statement as to how the inmate will continue the financial plan, if applicable, after release from custody is to be included.

**[d.  Effects of Non-participation.  Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following:**

**(1)  Where applicable, the Parole Commission will be notified of the inmate's failure to participate;**

**(2)  The inmate will not receive any furlough (other than possibly an emergency or medical furlough);]**

This restriction does not apply to inmates requiring medical furloughs and inmates with "OUT" or "COM" custody who are transferring from one institution to a minimum security level institution via an unescorted transfer.

**[(3)  The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;]**

The unit team is to consider institution needs, particularly for skilled workers. Such needs may require that an inmate with a financial obligation be assigned to a lower paying, non-UNICOR work assignment. The unit team considers this when developing the inmate's financial plan. An inmate working above the maintenance pay level who fails to make satisfactory progress on his or her payment plan is to be reduced to maintenance pay.

**[(4)  The inmate will not be assigned to any work detail outside the secure perimeter of the facility;]**

Additionally, inmates will not be permitted to participate in activities outside the secure perimeter, such as speaking engagements.

**[(5)   The inmate will not be placed in UNICOR.   Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months.   Any exceptions to this require approval of the Warden;]**

The unit team may recommend an inmate for priority placement in UNICOR to assist in paying a significant financial obligation. Ordinarily, an inmate will not be recommended for priority placement unless he or she has obligations totaling at least $1,000 and limited outside resources.

**[(6)   The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates.   This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;]**

Inmates in IFRP "REFUSE" status will not be permitted to spend more than $25 per month in commissary, excluding purchases of stamps and telephone credits.   Staff will not approve any special purchase item request(s) for inmates in IFRP "REFUSE" status, except for purchases of Kosher/Halal certified shelf-stable entrees for those inmates verified as common fare participants.

**[(7)   The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);**

**(8)   The inmate will not be placed in a community-based program;]**

The unit team is to consider the inmate's participation in the IFRP as an important factor when determining Community Corrections Center (CCC) placement.

**[(9)   The inmate will not receive a release gratuity unless approved by the Warden.]**

When a non-participating inmate's need for funds is exceptionally great, the unit team may recommend to the Warden that a gratuity be given.

**[(10)    [Reserved]]** (This section is reserved for future rule changes.)

### [(11)    The inmate will not receive an incentive for participation in residential drug treatment programs.]

Incentives are defined as early release, financial awards, maximum Community Corrections Center placement consideration, and local institution incentives.  Staff are referred to the Drug Abuse Programs Manual, for limitations, guidelines, and eligibility criteria.

(12)   The inmate's score on "Responsibility" on the Custody Classification form (BP-338), is to be zero.

9.   **SENTRY REQUIREMENTS.**  The unit team must enter an appropriate IFRP assignment into SENTRY no later than initial classification, update that assignment when the inmate's IFRP status changes, and review that assignment at least once every six months, particularly at the inmate's program reviews.  The IFRP assignments are:

   a.   **"UNASSG."**  "Unassigned" is automatically entered in SENTRY when an inmate is committed to federal custody.  At initial classification, this assignment **must** be converted to another assignment, based on the payment plan developed by the unit team and the inmate's willingness to participate.

   b.   **"NO OBLG."**  "No Obligation" is entered for an inmate when there is no documented financial obligation.  This category is also used for an inmate who has no financial obligation payable while in Bureau custody (e.g., An inmate receives a $50 assessment which the Judge remits or waives, and a $2,000 fine due while on supervised release).  "NO OBLG" will also be entered for inmates whose financial obligations have expired due to time limitations.

   c.   **"PART."**  "Participates in Program" is entered for an inmate who agrees to pay, signs an agreement, and is making payments towards his or her financial obligation(s).  In the case of initial commitment **only,** "PART" may be assigned to an inmate pending receipt of the first scheduled payment; however, that payment must be made **and** confirmed by staff within three months.

For all other inmates, the status of "PART" is to be reviewed in accordance with the payment plan or, at a minimum, every six months.

d. **"REFUSE."** "Refuses to Participate in Program" is entered immediately when an inmate verbally refuses to participate in the program. Subsequent to the initial classification, at any time the unit team discovers the inmate is not making the agreed-upon payment(s), it is their discretion to place the inmate into IFRP "REFUSE" status and do the following:

- Notify the inmate of the change in IFRP status, once the change is made.

- Discuss with the inmate the consequences of being placed in "REFUSE" status, and that consequences will begin immediately.

- Unit Staff are to document that the inmate has been notified and counseled on the change of IFRP status in the Inmate Activity Record.

Each month, no later than five business days prior to payroll submission, the Institution IFRP Coordinator must produce a roster of inmates in "REFUSE" status and distribute it to:

- all Department Heads,
- the Associate Warden of Programs, and
- the Performance Pay Coordinator.

It is the Performance Pay Coordinator's responsibility to ensure these inmates do not earn above maintenance pay or earn bonus pay or vacation. Additionally, an inmate who is in "REFUSE" status and assigned to work more than one detail will not earn above maintenance pay for his or her total combined earnings from each work assignment.

Once an inmate has been placed in "REFUSE" status, the inmate must demonstrate a willingness to continue participation in the program.

e. **"EXEMPT TMP."** "Temporarily Exempt from Participation" will be entered for an inmate who is unable to participate adequately toward satisfaction of the obligation, ordinarily because of medical or psychological restrictions which prevent the inmate from working. This assignment may also be used for an inmate who is unable to secure employment in UNICOR or advance beyond maintenance pay due to conditions beyond the inmate's control (overcrowding, institution need, special circumstances, etc.).

Additionally, at initial classification, the unit team may place newly committed inmates who have limited financial resources in IFRP "EXEMPT TMP" status until their first program review, when unit staff determine that the inmate has limited financial resources. However, in **all** cases, staff must also consider the inmate's ability to participate by using non-institutional (community) resources prior to placing the inmate in "EXEMPT TMP" status.

The unit team must review each inmate's "EXEMPT TMP" status at the inmate's program review. The Unit Manager will review and document the Unit Team's decision on the Program Review Report when the inmate is continued in this assignment.

f. **"COMPLT."** "Completed the Program" shall be entered for an inmate who has totally satisfied **all** financial obligations ordered payable during incarceration.

10. **MONITORING AND TRACKING REQUIREMENTS.** Unit staff are responsible for entering SENTRY data through the IFRP module and ensuring that an active contract exists for all inmates in "PART" status. Further instructions in data entry are available in the SENTRY Inmate Financial Responsibility Technical Reference Manual.

11. **APPEALS.** When an inmate's sentence of imprisonment is modified or corrected, absent any statement to the contrary in the new sentencing order, any existing court-ordered financial obligations remain in effect and should be collected pursuant to the provisions of this Program Statement. The provisions of this Program Statement also apply if an inmate is appealing his or her sentence, unless the court orders a "stay of collection" pending the appeal.

12. **WITNESS SECURITY CASES.** IFRP payments by Witness Security Cases shall be processed in accordance with this Program Statement.

13. **INSTITUTION SUPPLEMENT.** Each institution will develop an Institution Supplement to:

a. Designate an institution IFRP Coordinator;

b. Outline UNICOR priority placement;

PS 5380.07
1/3/2000
Page 14

   c.  Explain any procedures necessary to develop or monitor the institution IFRP program; and,

   d.  Specify the date of the month on which the IFRP Refuse roster will be accessed for the purposes of ensuring that non-participating inmates are not receiving performance pay above the maintenance pay level.

A copy of the Institution Supplement is to be forwarded to the respective Regional Correctional Programs Administrator.

                          /s/
                          Kathleen Hawk Sawyer
                          Director

PS 5380.07
1/3/2000
Attachment A

### AGREEMENT TO ADHERE TO INSTALLMENT SCHEDULE AGREEMENT FOR UNPAID FINES

In accordance with 18 U.S.C., Section 3624(e), I agree to adhere to an installment schedule while on supervised release, for payment of the remaining balance on any fine relative to the offense under which I am committed.  I understand the installment schedule for the payment of this fine will be established by the United States Probation Office responsible for my supervision subsequent to my release from incarceration.  I also understand that failure to execute this agreement will prevent my release from incarceration.


NAME & REGISTER NUMBER (PRINT)              STAFF WITNESS (PRINT)


NAME & REGISTER NUMBER (SIGNED)             STAFF WITNESS (SIGNED)


DATE                                        DATE



CC:   Central File (Section I)
      Inmate Systems Manager (J&C File)
      Supervising USPO

# EXHIBIT 1s

REGNO: 03421-068                                                          FUNC: DIS

NAME.: TAYLOR, KEVIN

G0002         MORE PAGES TO FOLLOW . . .

REGNO: 03421-068    NAME: TAYLOR, KEVIN
FRP ASGN: REFUSE         DATE OF MOST RECENT PAYMENT:  NO PAYMENT

----------------------MOST RECENT CONTRACT INFORMATION----------------------
NUMBER: 2                DATE ADDED: 06-14-2002  BY:  FTD
STATUS: STOPPED          REASON STOPPED: RELEASED

--------------------------MOST RECENT PAYMENT PLAN--------------------------

INMATE DECISION: REFUSED       25.00          QUARTERLY      TRUST FUND
ANTICIPATED START:  09-2002
REASON DECISION STOPPED: RELEASED
FOR THE FOLLOWING OBLIGATIONS:
        1


G0002       MORE PAGES TO FOLLOW . . .

REGNO: 03421-068     NAME:  TAYLOR, KEVIN
------------------------ALL FINANCIAL OBLIGATIONS-------------------------

|     OBLIGATION |                   |          |           |           |
| NBR  TYPE      | AMOUNT IMPOSED    | BALANCE  | PAYABLE   | STATUS    |
|----------------|-------------------|----------|-----------|-----------|
| 1 FINE         | 10000.00          | 10000.00 | IMMEDIATE | WAIT CTRT |

G0000       TRANSACTION SUCCESSFULLY COMPLETED