UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
KEVIN TAYLOR,                  )
     Petitioner,               )
                               )      CIVIL ACTION NO.
     v.                        )      05-10221-DPW
                               )
DAVID L. WINN, WARDEN,         )
     Respondent.               )
```

MEMORANDUM AND ORDER
June 8, 2005

Petitioner Kevin Taylor seeks habeas corpus relief pursuant to 28 U.S.C. § 2241. As grounds for relief, he asserts that the federal Bureau of Prisons ("BOP"): (1) acted improperly in placing him in the Inmate Financial Responsibility Program ("IFRP") and, thereafter, imposing sanctions on him for his refusal to participate; and (2) miscalculated his good conduct time ("GCT") credit. The remedy sought by Petitioner for these alleged wrongs is a court order that the BOP be prohibited from placing him in the IFRP and also that it recalculate his GCT. Respondent has moved to dismiss the petition. I will grant that motion.

### I. BACKGROUND

**A. Facts**

For purposes of resolving a motion to dismiss for failure to state a claim upon which relief can be granted, the court "must take the allegations in the plaintiff's pleadings as true and

must make all reasonable inferences in favor of the plaintiff." <u>Rivera v. Rhode Island et al.</u>, 402 F.3d 27, 33 (1st Cir. 2005). "Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery."  <u>Cooperman v. Individual Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).

A reviewing court is not, however, unduly constrained.  An exception to the general principle of limitation to the complaint has been made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  Accordingly, the following is drawn from the well-pleaded factual allegations in Petitioner's petition and the undisputed documents submitted in support of the motion to dismiss.

On June 28, 1989, Petitioner was sentenced in the United States District Court for the Western District of Pennsylvania to a twenty (20) year term of imprisonment for various drug-related offenses to which he had pled guilty.[1]  <u>See</u> Exhibit 1b, Judgment and Commitment Order ("J&C Order"), p.1, attached to Declaration of FMC Devens Paralegal Specialist Stephanie Scannell ("Scannell

---

[1] Specifically, Petitioner pled guilty to: conspiracy to possess with intent to distribute and to distribute 3-methyl-fentatyl, in violation of 21 U.S.C. § 846; and possession with intent to distribute and distribution of heroin, in contravention of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), respectively.

Decl."), Exhibit 1 to Respondent's Memorandum in Support of Motion to Dismiss.[2]  The court also ordered Petitioner to pay the United States the sum of $10,150, comprising a $10,000 fine and a $150 special assessment.  See Tab B to Petitioner's Petition for Writ of Mandamus and/or Habeas Corpus ("Petition"); Exhibit 1b to Scannell Decl. at p.5.  The page of the J&C Order on which the fine and special assessment were set forth included a section in which the court could indicate, by ticking off a check box, whether the sum was to be paid "immediately" or "as follows:", with blank space under the second designation within which, presumably, the alternative payment arrangement was to be set forth.  Neither box was checked off on Petitioner's J&C Order.

During Petitioner's June 28, 1989 sentencing hearing, at which he was represented by counsel, the following exchange took place:

> THE COURT: . . . Further, the Probation Office has concluded, and I agree, that he profited from his narcotic dealing.  A BMW automobile has been seized apparently by the marshal and is held in custody.  At the very least, that automobile should be sold to pay a fine in the sum of $10,000.
>
> MR. TEITELBAUM:[3] It was actually, Your Honor, that the Blazer was seized.

---

[2] References to the various exhibits to the Scannell Declaration will be denoted by exhibit and page number (i.e., "Exhibit 1e to Scannell Decl. at p.2").

[3] Bruce Teitelbaum was the Assistant U.S. Attorney appearing for the government at the sentencing hearing.  See Tab B to Petition at p.1.

>    MR. TAYLOR: And it's not my truck.
>
>    THE COURT: All right.  And a fine in the sum of $10,000.  In addition, a special assessment of $50.00 will be imposed at each count for a total of $150.00.

See Tab B to Petition at p. 2-3.  Petitioner has been in continuous custody since his arrest on January 5, 1989 for the above-referenced offenses.  He currently is incarcerated at the Federal Medical Center, Devens ("FMC"), a BOP facility, of which Respondent David L. Winn is the warden.

Between 1995 and 2001, the BOP classified Petitioner as having "no obligation" status with respect to the IFRP.  This designation followed from the determination by various BOP personnel that the $10,000 fine imposed on Petitioner as part of his sentence was not due during his imprisonment.[4]  Prior to 1995, Petitioner's IFRP status had variously been "unassigned," "participates," and "refuses;" he has been in "refused" status

---

[4] See Tab C to Petition at p.1 (April 20, 1995 memorandum from L. Morello, Unit 4 Counselor, re Petitioner) ("PLEASE BE ADVISED THAT THE ABOVE NAMED INDIVIDUAL IS CURRENTLY IN THE 'NO OBLIGATION' STATUS CONCERNING HIS FINANCIAL OBLIGATION DUE TO THE FACT THAT THE J&C DOES NOT SPECIFICALLY STATE THAT HE IS TO PAY HIS FINE WHILE INCARCERATED."); id. at p.3 (BOP Progress Report re Petitioner dated January 22, 1999) ("Progress on Financial Plan: Mr. Taylor was ordered to pay a $150.00 Felony Assessment and a $10,000 Fine by the U.S. District Court, Western District of Pennsylvania.  He has paid the assessment in full and the fine is due following release."); id. at p.5 (BOP Progress Report re Petitioner dated February 25, 2001) ("Progress on Financial Responsibility Plan: Inmate Taylor has completed payment of a $150.00 court ordered felony assessment.  He has a $10,000 fine that is due following release.").

since June 1, 2001.[5]

By letter dated March 21, 2001, Financial Litigation Agent Gail Ward of the office of the United States Attorney for the Western District of Pennsylvania -- apparently in response to an inquiry from Petitioner's BOP case manager regarding the $10,000 fine -- rejected Petitioner's position that he did not have to pay the fine until he was released because the J&C Order did not specifically provide otherwise, writing that:

> Pursuant to 18 U.S.C. § 3572(d), a fine is due immediately unless the Court provides for payment on a date certain or in installments.  Since there is no evidence in the record that the Court provided for payment on a date certain or in installments, it has been, and still is, the position of the United States that the fine is due immediately.  The Motion to Modify Sentence your attorney filed in September, 1995 was denied, as was the appeal you filed on December 15, 1995.  More recently, the Supreme Court declined to hear your case.  In effect, the appeal process has ended and the fine is now due.

Exhibit 1h to Scannell Decl.

As a consequence of Petitioner's ongoing refusal to participate in the IFRP, which is a voluntary program, the BOP has: (1) set his performance pay at maintenance-level; (2) limited his commissary spending to $25 per month; (3) assigned him lowest housing status; (4) found him ineligible for placement

---

[5] See Exhibit 1e to Scannell Decl. at p.1 (IFRP status "unassigned" from 07-10-1989 to 03-29-1990; "participates" from 03-29-1990 to 03-30-1991; "refuses" from 03-30-1991 to 04-22-1991; "participates" from 04-22-1991 to 04-13-1992; "refuses" from 04-13-1992 to 08-06-1992; "participates" from 08-06-1992 to 07-21-1993; "refuses" from 07-21-1993 to 04-20-1995; "no obligation" from 04-20-1995 to 06-01-2001; and "refuses" from 06-01-2001 to current).

in a community-based program; and (5) imposed the "denial of any camp facility, half-way house, and transfers to other facilities."  Petition at p.10; Memorandum in Support of the Defendant's Motion to Dismiss ("MTD Memo") at p.5.

Given the twenty (20) year term of imprisonment imposed in 1989,[6] the full term of Petitioner's sentence would expire on January 4, 2009, absent consideration of GCT credits.  See Tab F to Petition at p.1.  A prisoner may earn GCT credits of up to 54 days for each year of imprisonment.  According to the BOP's calculations, Petitioner's "TOTAL EARNED AND PROJECTED AMOUNT" of GCT amount at this point is 923 credits.  See Tab F to Petition at p.2.  Based on this figure -- which assumes that Petitioner will earn the maximum 54 GCT credits per year during the balance of his imprisonment -- the BOP has determined that Petitioner's projected "STATUTORY RELEASE DATE" is June 26, 2006.[7]  Id. at p.1.  The BOP records submitted by Petitioner indicate that for

---

[6]Respondent alleges that Petitioner "was sentenced on January 17, 2000, to an 87-month term of incarceration."  MTD Memo at p.11.  The document cited by Respondent in support of this erroneous claim indicates otherwise.  See Exhibit 1c to Scannell Decl. at p.4 ("SENTENCED 06-28-1989 TO 20 YEARS IMPRISONMENT").  Elsewhere in its memorandum, Respondent sets forth the correct sentencing date and term of imprisonment.  See MTD Memo at p.1-2.  I do not take Respondent to be contesting Petitioner's factual allegations on this point and ascribe the discrepancy it its memorandum on this matter to typographical error, which also accounts for the erroneous subsidiary claims in the same paragraph regarding projected GCT credits, sentence with GCT credits included, and release date.

[7]This date is arrived at by subtracting 923 days from January 4, 2009, the date on which the full, twenty (20) year term would expire.

each year of his imprisonment thus far save one, he has earned 54 GCT credits.  Id. at p.2.[8]

**B. Procedural History**

After exhausting his administrative remedies within the BOP regarding both his IFRP participation and his GCT claims, Petitioner filed a petition for writ of habeas corpus in this court on February 2, 2005.  Respondent thereupon filed a motion to dismiss.

## II. IFRP CLAIM

Petitioner's argument regarding his alleged improper placement in the IFRP consists of the following five constituent parts.  First, Petitioner contends that because the court order imposing the $10,000 fine did not specifically state that the fine was due while Petitioner was incarcerated, the fine was not due until his release.  Therefore, Petitioner has no "documented financial obligation" based on the fine while he is imprisoned, and should be accorded "no obligation" status with respect to the IFRP.  See Petition at p. 9, 13-14.

---

[8]Petitioner received only 34 GCT credits for the year between January 5, 1992 and January 4, 1993, apparently having lost 20 credits due to a disciplinary matter.  See Tab F to Petition at p.2.  The loss of these 20 credits in 1992-93 would seem to account for the 20-day discrepancy noted by Petitioner in his opposition memorandum between his calculation of the amount of GCT credit he was due using BOP's methodology and the BOP's own calculation.  See Memorandum in Support of the Petitioner's Motion in Opposition to Defendant's Motion to Dismiss ("Opp. Memo") at p.8.  I do not, however, resolve the question of the precise number of GCT credits to which Petitioner is entitled.  Rather, I address only the methodology for calculating those credits.

Second, Petitioner posits that by classifying him as having "no obligation" at various times, the BOP created for him a liberty interest in continued "no obligation" classification that it could not withdraw without affording due process. See id. at p. 15.

Third, Petitioner argues that he has a protected liberty interest in what he characterizes as a court order that the government sell the vehicle seized from him to partially satisfy the $10,000 fine. By violating the court order to sell the vehicle, Petitioner claims, the government defeated a liberty interest without affording him the requisite due process. See id. at 9-12, 15.

Fourth, Petitioner contends that the First Circuit "prohibits [a] district court of delegating its authority to the BOP to collect fines," that "the BOP lacked any authority to collect fines," and that by attempting to collect a fine from him despite the foregoing, the BOP deprived him of a protected liberty interest. Id. at 13.

Fifth, Petitioner argues that the sanctions the BOP imposed on him for his refusal to participate in the IFRP "violated his due process right to be free from loss of liberty entitlement(s)." Id. at 13.

For the reasons set forth below, I find that all of Petitioner's claims regarding the IFRP lack merit and, accordingly, do not provide a basis for habeas relief.

Analysis begins with the consideration of Petitioner's sentence -- specifically, the $10,000 fine -- as reflected in the J&C Order. Petitioner bases his argument that this fine was not due until he was released from prison on a misreading of the relevant statute, 18 U.S.C. § 3572(d), which provides, in pertinent part:

> A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule. . . . If the judgment, or, in the case of a restitution order, the order, permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made.

18 U.S.C. § 3572(d).

Petitioner argues that the J&C Order "does not reflect the Court's intent the fine was to be paid immediately", noting that the box next to the word "immediately" was not checked. The presumption under § 3572(d), however, is that "[a] fine is due and payable immediately upon imposition, unless the court specifies otherwise." United States v. Michaud, 928 F.2d 13, 15-16 (1st Cir. 1991) (per curiam); see also United States v. Gresham, 964 F.2d 1426, 1429 (4th Cir. 1992) (holding that "a penalty or fine imposed under section 3572(d) is due 'immediately' unless the district court provides for payment on a date certain or in installments"). The default under § 3572 that a fine is due immediately can only be overcome by explicit

instructions from the court that the monies owed be paid on a date certain or under an installment schedule established by the court. Petitioner points to no evidence that the court provided either for payment on a date certain or in installments and, without such evidence, the failure to fill in a check-box on the J&C Order does not operate to defeat the "due and payable immediately" presumption. See Michaud, 928 F.2d at 16 (in response to argument that sentencing court had "never 'formally' told [appellant] when the fine was due," holding that because the court had not provided for payment on a date certain or in installments, "the fine was due and payable immediately").

Petitioner's argument that the BOP created a liberty interest entitled to due process protection by designating him as having "no obligation" IFRP status between 1995 and 2001 is without merit. The "no obligation" classification apparently was based upon a misunderstanding by certain BOP personnel regarding when Petitioner's court-imposed fine was due and was both preceded and followed by BOP classifications treating him as eligible for the IFRP because of the fine. The "no obligation" classification cannot fairly be characterized as the sort of "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to which a state-created liberty interest might attach. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In any event, the BOP administrative process provided a mechanism consistent with due process through which Petitioner

could contest the classification.

Also unavailing is Petitioner's argument that he had a protected liberty interest in what he characterizes as a court order that the government sell the vehicle seized from him to satisfy, in part, the $10,000 fine.  The record evidence cited by Petitioner does not establish that there was an explicit court order on this point and raises questions about whether the vehicle that had been seized even belonged to Petitioner.  See Tab A to Petition at p.2-3 (colloquy from Petitioner's sentencing hearing set forth supra).  More importantly, no mention of the vehicle sale -- for example, a notation that the $10,000 fine be offset by the proceeds from the sale -- is made in the J&C Order.  Petitioner has offered no basis for concluding that a court order mandated the sale of the seized vehicle to pay his $10,000 fine.  Even assuming, for the sake of argument, that such an order had been made, the sale of the vehicle would, by his admission, not satisfy in full the court-imposed fine,[9] and, as a result, Petitioner would still have an IFRP-qualifying financial obligation.

Petitioner's contention that the BOP "lacked any authority to collect fines," and deprived him of a protected liberty interest by attempting to do so despite this absence of mandate, fails as well.  The cases cited by Petitioner in support of his argument on this point stand for the proposition that a "court

---

[9] Petitioner alleged that the appraisal value of the vehicle was $8,500.  See Petition at p.9.

cannot delegate to others its 'inherent responsibility' over matters of punishment, which includes 'final authority over all payment matters.'" United States v. Tarbox, 361 F.3d 664, 665 n.1 (1st Cir. 2004) (quoting United States v. Merric, 166 F.3d 406, 409 (1st Cir. 1999)); see also United States v. Kassar, 47 F.3d 562, 568 (2nd Cir. 1995) (finding delegation by sentencing court to the probation office the setting of an installment payment schedule for a court-ordered fine and restitution to be impermissible).  Thus, if the court had specified that Petitioner's $10,000 fine was to be paid in installments, it could not have empowered the BOP, the probation office, or some other entity "to make the final decision as to the installment schedule for payments."  Merric, 166 F.3d at 409.  But the case law does not extend to support the proposition that when the payment is effectively ordered to be paid in full immediately the BOP lacks the authority to undertake collection.

   Numerous courts have passed on and upheld the constitutionality of the IFRP, the mechanism by which the BOP collects payments, including court-ordered fines.  See, e.g., McGhee v. Clark, 166 F.3d 884, 886 (7th Cir. 1998) (noting that the IFRP "has been uniformly upheld against constitutional attack"); Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2nd Cir. 1990) (per curiam) (rejecting challenges to constitutionality of IFRP), cert. denied, 498 U.S. 819 (1990); James v. Quinlan, 866 F.2d 627, 631 (3rd Cir. 1989) (finding that IFRP did not deprive inmates of their due process rights and was "properly enacted in

accordance with the provisions of the Administrative Procedures Act"), cert. denied, 493 U.S. 870 (1989).

As the Johnpoll court explained, a constitutional challenge to the BOP's authority to collect court-ordered judgments or fines must fail,

> because the IFRP program serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation. The Bureau of Prisons' collection of fines is not inconsistent with or preempted by the Attorney General's delegation to assistant attorneys general and United States attorneys of responsibility for collection of judgments and fines . . . because there is no reason to presume that this delegated power is exclusive. Therefore, the Bureau of Prisons has not exceeded its statutory authority, nor departed from its own regulations, by administering a program to collect . . . judgments or fines.

Johnpoll, 898 F.2d at 851 (internal citations omitted).  Thus, the BOP was operating well within its authority in using the IFRP as a mechanism to effect payment of Petitioner's court-ordered fine.

Finally, I consider Petitioner's argument that the BOP imposed "sanctions" on him for his refusal to participate in the IFRP and thereby "violated his due process right to be free from loss of liberty entitlement(s)."  I recognize that although the IFRP is styled a "voluntary" program, failure to "volunteer" has various consequences that entail "being ineligible to receive certain benefits" in a manner that might be characterized as

pressuring "volunteers."[10]  Nevertheless, Petitioner has no

---

[10]The regulations governing the IFRP enunciate the "effects of non-participation" as follows:

> Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following:
>
> (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;
>
> (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);
>
> (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;
>
> (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;
>
> (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;
>
> (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $ 25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;
>
> (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);
>
> (8) The inmate will not be placed in a community-based program;
>
> (9) The inmate will not receive a release gratuity unless approved by the Warden;
>
> (10) [Reserved]

inherent liberty interest in the benefits lost, see Sandin, 515 U.S. at 483-84, nor did the "effects of non-participation" he suffered constitute the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. Cf. Johnpoll, 898 F.2d at 851 (in response to constitutional challenge to IFRP made on ground that "not permitting [the inmate] to opt out of the IFRP is punitive in nature and therefore violates due process," ruling that "compelled participation [in IFRP] is not punitive because . . . it was reasonably related to a legitimate governmental objective of rehabilitation") (internal quotation marks omitted).

### III.  GCT CLAIM

In light of recent First Circuit precedent upholding the method employed by the BOP to calculate GCT credits, resolution of Petitioner's claim on this point is straightforward. The First Circuit considered the BOP's interpretation of "term of imprisonment" in the GCT context and determined that the interpretation was reasonable. Perez-Olivo v. Chavez, 394 F.3d 45, 52-54 (1st Cir. 2005).

---

(11) The inmate will not receive an incentive for participation in residential drug treatment programs.

28 CFR § 545.11 (2005).

## IV. CONCLUSION

For the reasons set forth more fully above, Respondent's motion to dismiss is GRANTED.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE